**UNITED STATES of America, Appellee,**

v.

**Henry Kenneth WANGROW, Appellant.**

**No. 90–1833NE.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 15, 1990.

Decided Feb. 6, 1991.

---

Mark S. Cohen, Omaha, Neb., for appellant.

Jan W. Sharp, Omaha, Neb., for appellee.

Before ARNOLD and MAGILL, Circuit Judges, and BENSON,* Senior District Judge.

ARNOLD, Circuit Judge.

Henry Kenneth Wangrow appeals his convictions for postal burglary in violation of 18 U.S.C. § 2115, and interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. § 2312. We affirm.

The facts of the crimes themselves are largely irrelevant to this appeal. We note, however, that this case began on January 31, 1967, when Omaha police arrested three men, Henry Wangrow, Mark Murphy, and Daniel Czajkowski, for burglarizing a United States Post Office that same day in Omaha, using a vehicle stolen in Chicago, Illinois. The government did not bring Wangrow to trial on these charges, and the additional charge of bond jumping in violation of 18 U.S.C. § 3146,[1] until February 6, 1990.

Wangrow's main contention on appeal is that the District Court[2] erred in failing to dismiss the indictments against him because his Sixth Amendment right to a speedy trial was violated. Wangrow filed two motions to dismiss on this ground, one in 1968, and the other in 1989. We will review each of them in turn.

I.

 Wangrow filed his first motion to dismiss on August 13, 1968.[3] He claimed that the failure of the government to try him from the time of his arrest on January 31, 1967, to August 13, 1968, violated his right to a speedy trial. After a hearing,

---

* The Hon. Paul Benson, Senior United States District Judge for the District of North Dakota, sitting by designation.

1. A grand jury indicted Wangrow for this crime on September 30, 1970, when he failed to appear for his trial on the other two charges. The jury acquitted Wangrow of this offense.

2. The Hon. Lyle E. Strom, Chief United States District Judge for the District of Nebraska.

3. Wangrow's two co-defendants joined him in this motion. Their cases, however, have been resolved. Therefore, we will discuss Wangrow's original motion to dismiss as though he alone filed it.

the District Court[4] denied the motion on August 16, 1968.

A grand jury indicted Wangrow and his two co-defendants on April 6, 1967, on both counts. On June 28, 1967, the District Court set a trial date of July 6, 1967. On July 6, 1967, Wangrow's counsel, Paul Galter, requested an indefinite continuance. Galter requested another continuance on July 24, 1967, because Wangrow was scheduled to undergo surgery. Counsel represented to the District Court that his client would be incapacitated because of the surgery at least through mid-September of 1967.

Galter requested another continuance from the United States Attorney in September 1967, asking that he not request a trial earlier than the end of October because Galter would be vacationing in Europe. In the same letter, Galter also indicated that the same defendants in this case had been convicted of postal burglary in Minnesota. Murphy and Czajkowski had begun serving their fifteen-year sentence, but Wangrow was out on bond pending appeal. Given these circumstances, Galter indicated that the defendants did not want their case to go to trial. On July 22, 1968, this Court affirmed the Minnesota convictions. *Wangrow v. United States*, 399 F.2d 106 (8th Cir.), *cert. denied*, 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968). Galter wrote the United States Attorney on August 1, 1968, confirming that the case had been set for the jury term beginning August 5, 1968, but also indicating that a trial would not be necessary in view of the outcome of the Minnesota case. On August 13, Wangrow filed his motion to dismiss.

Assuming that Wangrow's right to a speedy trial attached on the date of his arrest, January 31, 1967, we conclude that his right to a speedy trial had not been violated as of August 13, 1968. Wangrow concedes that the defendants created the delays through at least October 1967. Contrary to appellant's assertion, it is not "clear the defendants were prepared for trial at all times after Mr. Galter returned from Europe...." Appellant's Brief at 10. At the 1990 trial, when Wangrow's current counsel asked Galter (his 1968 counsel) if he and Wangrow were prepared for trial prior to or as of July or August *1969*, Galter responded "[n]ot at all." Tr. at 103. Indeed, Galter recalled having contact with his client only two times: at Wangrow's bond hearing and at his formal arraignment. *Id.* at 102. Moreover, Galter informed the government on at least two occasions that a trial in Wangrow's case would be unnecessary. In the latter of these letters, dated August 1, 1968, Galter indicated that he expected Wangrow to plead guilty.

## II.

Wangrow filed his second motion to dismiss on September 13, 1989. In this motion, Wangrow cited two grounds for relief. First, he claimed that the government's failure to try him between October 1967 (he concedes that the delays prior to this date were because of the defendants' actions) and May 5, 1969, when the trial was originally scheduled, violated his constitutional right to a speedy trial. Second, he claimed that the failure of the government to extradite and try him while he was serving a nineteen-year prison term in Mexico also violated his right to a speedy trial. After holding two hearings and receiving numerous documents into evidence, the magistrate[5] issued a thirty-eight page memorandum recommending that Wangrow's motion to dismiss be denied. Judge Strom adopted the magistrate's recommendation and findings of fact in their entirety. Nos. 01271, 01272, 01635, Memorandum and Order (D.Neb. Jan. 2, 1990).

The magistrate read Wangrow's first claim to argue that the government denied him a speedy trial between August 16, 1968, and January 29, 1969, when the federal district court in Minnesota issued a warrant for his arrest after he failed to

**4.** The Hon. Richard E. Robinson, late a Senior United States District Judge for the District of Nebraska.

**5.** The Hon. Richard G. Kopf, United States Magistrate Judge for the District of Nebraska.

report to serve his sentence. The magistrate excluded the period prior to August 16, 1968, from consideration because he believed Judge Robinson's previous ruling precluded him from considering that period. He also excluded from consideration the period from January 29, 1969, to May 5, 1969, since at that time Wangrow was a fugitive from federal authorities. Using the analysis developed in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972),[6] the magistrate found that the delay attributable to the government, between August 16, 1968, and January 29, 1969, did not violate Wangrow's right to a speedy trial. The magistrate concluded that Wangrow's motion to dismiss filed on August 13, 1968, was "disingenuous" since he filed it only a few days after his lawyer indicated he would plead guilty, and after the case had been set for the August 5, 1968, jury term. Thus, the magistrate concluded that "there is no evidence that Wangrow asserted his speedy trial rights during the time frame now under analysis." Nos. CR 01271, CR 01272, CR 01635, Magistrate's Findings and Recommendations, at 26 (D.Neb. Nov. 22, 1989). The magistrate also found that Wangrow did not suffer prejudice as a result of the six-month delay.

■ After reviewing the magistrate's recommendations and the District Court's order, we conclude that the District Court did not err in applying the *Barker* factors or clearly err in its factual findings. Even if Wangrow's August 13, 1968, motion to dismiss amounted to an assertion of his right to a speedy trial, his failure to demonstrate prejudice, and the relatively short time period of the delay (August 16, 1968 to January 29, 1969), convince us that the government did not violate his right to a speedy trial.

■ Wangrow argued in the second part of his motion to dismiss that the government's failure to extradite and try him before September 13, 1989, also violated his

right to a speedy trial. Despite the lengthy delay, we agree with the District Court that Wangrow's speedy-trial right was not violated. As of January 29, 1969, Wangrow was a fugitive. Federal authorities did not know of his whereabouts until December 23, 1970. On that date, officials learned that Wangrow was incarcerated in Mexico on narcotics and torture-murder charges.

The government immediately requested Mexican authorities to deport Wangrow to the United States as soon as they resolved his charges. Despite the fact that Wangrow's offenses were subject to extradition under existing treaties with Mexico, at no time did the government seek Wangrow's extradition, because it believed Mexico would deny the request. Nevertheless, government authorities remained in periodic contact with Mexican officials regarding Wangrow. In August 1979, the government investigated Wangrow's nationality because he claimed to be a Mexican citizen, using an assumed name, Mexican birth certificate, and false fingerprints. The American consulate in Mexico had tried to meet with Wangrow in prison in 1981, but Wangrow refused, again claiming to be a Mexican citizen. Wangrow refused to meet with American officials on several other occasions as well. After Wangrow completed his sentence in Mexico, he was released to American officials on April 30, 1989.

These facts indicate that Wangrow did not assert his right to a speedy trial and, in fact, sought to avoid detection by American authorities. Since the delay here is attributable to Wangrow, he has waived his right to a speedy trial. See *Barker,* 407 U.S. at 529, 92 S.Ct. at 2191. We also reject his argument based on *United States v. Pomeroy,* 822 F.2d 718 (8th Cir.1987). In *Pomeroy,* we upheld dismissal of an indictment, concluding that the government had a duty to seek Pomeroy's extradition since he had repeatedly requested it, even though Canada had discretion to deny extradition under

---

6. In *Barker,* the Supreme Court identified "some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right." Those factors were

the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530, 92 S.Ct. at 2192 (footnote omitted).

**1438**

its treaty with the United States. *Id.* at 721–22. Thus, the government's failure to try to extradite Pomeroy while incarcerated for three and one-half years in Canada violated his right to a speedy trial. Assuming that extradition from Mexico was practicable,[7] Wangrow's attempts to conceal his identity from the government indicate that he did not want to be extradited, much less stand trial. Moreover, unlike Pomeroy, Wangrow did not assert his right to a speedy trial until he returned to the United States, and knew he faced trial after a period of nineteen years. Consequently, the failure of the government to extradite him did not violate his right to a speedy trial. In view of our conclusion that Wangrow was the cause of the delay, we also reject his claim that he has suffered undue prejudice [8] from the government's failure to extradite him.

### III.

In addition to his speedy-trial claims, Wangrow raises several other issues on appeal. He claims the District Court erred in failing to grant a mistrial because the prosecutor referred to his Mexican incarceration during opening argument; in denying him permission to cross-examine his co-defendant Murphy on each of his prior convictions; and in failing to instruct the jury that it could consider Murphy's prior bad acts in evaluating his credibility. He also claims that the evidence did not support his conviction beyond a reasonable doubt. After reviewing the record, we find each of these contentions to be without merit and therefore reject them.

Accordingly, the judgment of the District Court is affirmed.

---

**7.** The magistrate found that a request for extradition would have been futile.

**8.** The prejudice Wangrow claims he suffered was the inability to serve his Mexican and American charges concurrently, a speculative claim at best.