UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose SANDOVAL, Defendant–Appellant.

No. 91–50806.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 9, 1992.

Decided April 2, 1993.

Guy C. Iversen, Asst. Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Jeffrey W. Johnson, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: BROWNING, SCHROEDER, and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

Appellant Jose Sandoval appeals his conviction for concealment and sale of narcotics in violation of 21 U.S.C. § 174 (repealed 1971). The primary question before us is whether Sandoval's right to a speedy trial under the Sixth Amendment has been violated. Sandoval was arrested for selling heroin and cocaine to undercover federal agents on September 10, 1970. Released on $15,000 bond shortly after his arrest, Sandoval was indicted by a federal grand jury on September 30, 1970. He did not appear in court for arraignment on October 26, 1970, and remained at large for almost twenty-one years, until his arrest on April 19, 1991. He was arraigned on the original indictment shortly thereafter,[1] and convicted on all counts following a jury trial.

1. A second indictment was filed against Sandoval on May 24, 1991, charging one count of bail jumping in violation of 18 U.S.C. § 3150. Sandoval pled guilty to this charge on July 19, 1991; this appeal is unrelated to the 1991 indictment.

2. For whatever reason, different standards of review are employed depending on the district court's resolution of a motion to dismiss for constitutional speedy trial reasons. A dismissal is reviewed for abuse of discretion. *United States v. Sears, Roebuck & Co.*, 877 F.2d 734, 739 (9th Cir.1989); *United States v. Simmons*, 536 F.2d 827, 832 (9th Cir.), *cert. denied*, 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 130 (1976). Denial

## I. Discussion

### A. Sixth Amendment speedy trial claim.

■ Sandoval claims that the lengthy gap between his arrest and indictment in September 1970 and his trial in June 1991 violated his right to a speedy trial. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. We review Sandoval's Sixth Amendment speedy trial claim de novo. *United States v. Wallace*, 848 F.2d 1464, 1469 (9th Cir.1988) (citing *United States v. Williams*, 782 F.2d 1462, 1464 (9th Cir.1985)).[2] The issue we face is whether Sandoval, despite his voluntary disappearance, can claim a constitutional speedy trial right violation.

The seminal case in this area is *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), in which the Supreme Court identified "some of the factors" to be employed in assessing whether a particular defendant has been deprived of the right to a speedy trial. *Id.* at 530–33, 92 S.Ct. at 2191–94. They include: (1) "[t]he length of the delay"; (2) "the reason the government assigns to justify the delay"; (3) "the defendant's responsibility to assert his right" to a speedy trial; and (4) the "prejudice to the defendant." *Id.*[3]

The Court noted that courts and prosecutors have primary, but not exclusive, responsibility for seeing that cases go to trial. *Id.* 407 U.S. at 529, 92 S.Ct. at 2191. A defendant has "some responsibility" to assert her speedy trial rights, in part because "deprivation of the right may work to the accused's advantage." *Id.* at 521,

of a dismissal is reviewed de novo. *Wallace*, 848 F.2d at 1469; *Williams*, 782 F.2d at 1464.

One recent case appears to mix the two review standards, citing *Sears*, a dismissal case counseling abuse of discretion review, as authority for de novo review. *United States v. Gonzalez–Sandoval*, 894 F.2d 1043, 1050 (9th Cir.1990).

3. Under *Doggett v. United States*, — U.S. —, —, 112 S.Ct. 2686, 2693, 120 L.Ed.2d 520 (1992), actual prejudice need not necessarily be shown in order for factor (4) to weigh in a defendant's favor.

529, 92 S.Ct. at 2187, 2191. The Court emphasized that "the right to a speedy trial is unique in its uncertainty as to when and under what circumstances it must be asserted or may be deemed waived," and thus, instead of an absolute standard, "the better rule" is the one that analyzes the assertion or non-assertion of the right as one of several important considerations. *Id.* at 528–29, 92 S.Ct. at 2191. However, "[w]e hardly need add," the Court said in *Barker,* "that if delay is attributable *to the defendant,* then his waiver may be given effect under standard waiver doctrine, the demand rule aside." *Id.* at 529, 92 S.Ct. at 2191 (emphasis added).[4] Standard waiver doctrine defines waiver as " 'an intentional relinquishment or abandonment of a known right or privilege.' " *Id.* at 525, 92 S.Ct. at 2189 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

Therefore, when the defendant seeks to "avoid detection by American authorities" and any post-indictment delay can be attributed to him, he waives the right to a speedy trial. *United States v. Wangrow,* 924 F.2d 1434, 1437 (8th Cir.1991) (citing *Barker,* 407 U.S. at 529, 92 S.Ct. at 2191);[5] *cf. United States v. Gonzalez–Sandoval,* 894 F.2d 1043, 1050 (9th Cir.1990) (pre-indictment delay excused; "[defendant]'s own evasive efforts vis-a-vis the border patrol agents" were primary cause of delay); *United States v. Terrack,* 515 F.2d 558, 559 (9th Cir.1975) (pre-indictment delay excused; "[defendant] cannot claim a violation of his Sixth Amendment rights by reason of delays of his own making"). *But see Rayborn v. Scully,* 858 F.2d 84, 90 (2d Cir.1988) ("a defendant's status as a fugitive will not relieve the state of its sixth amendment obligations"), *cert. denied,* 488 U.S. 1032, 109 S.Ct. 842, 102 L.Ed.2d 974 (1989).

A finding of waiver is implicit in the district court's oral ruling on Sandoval's motion to dismiss:

> I do find ... that Mr. Sandoval purposely absented himself from the proceedings of this court. He did not voluntarily submit himself to it, although he was not constantly here in the United States to avail himself of that proceeding here in the United States, although he did return to the United States, which is uncontroverted by the [government]. I don't find that this would cause the government to have any form of notice to have Mr. Sandoval found to bring him to justice in this trial.

Sandoval ER at 35.[6]

Other courts dealing with a fugitive's Sixth Amendment speedy trial claim, rather than focusing on waiver, have looked first to the cause of the post-indictment delay, typically permitting the government to justify the delay by showing the defendant's purposeful absence. *E.g., United States v. Mitchell,* 957 F.2d 465, 468–69 (7th Cir. 1992) (second factor "weighs heavily against Mitchell," where his "fugitive status in Colombia, including his use of a false name there, is the principal reason for the delay in bringing him to trial"); *United*

---

4. "The principal purpose of the speedy trial clause is to protect the accused from unnecessary delay *on the part of the government* in bringing the accused to trial." *United States v. Diacolios,* 837 F.2d 79, 82 (2d Cir.1988) (emphasis added).

5. In *Wangrow,* the Eighth Circuit ruled that the almost 19-year gap between December 1970, the date the government learned of Wangrow's incarceration in Mexico, and September 1989, the date he went to trial on the indictment stemming from his January 1967 arrest, did not violate the defendant's speedy trial right. *Wangrow,* 924 F.2d at 1437. "Since the delay here is attributable to Wangrow," the court ruled, "he has waived his right to a speedy trial." *Id.*

6. As the government points out, the Speedy Trial Act of 1974 requires the trial of an indicted defendant within 70 days of arraignment. 18 U.S.C. § 3161(c)(1) (1988); *see also id.* § 3164(b) (accused held in custody awaiting trial must be tried within 90 days of the "beginning of such continuous detention"). The Act specifically excludes "[a]ny period of delay resulting from the absence or unavailability of the defendant" in computing the time within which the trial must begin. *Id.* § 3161(h)(3)(A). A defendant is "absent" when he attempts to "avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence." *Id.* § 3161(h)(3)(B).

Sandoval's arrest and indictment, of course, predate the Act.

*States v. Blanco,* 861 F.2d 773, 778–81 (2d Cir.1988) ("A defendant's claim that the government violated her right to a speedy trial is seriously undermined when the defendant, and not the government, is the cause of the delay"; "[c]oming from a former fugitive, Blanco's claim that her right to a speedy trial was denied carries almost no weight"), *cert. denied,* 489 U.S. 1019, 109 S.Ct. 1139, 103 L.Ed.2d 200 (1989).

However, use of this balancing framework, where the defendant has been a fugitive from justice, seems inconsistent with *Barker's* insistence that "delay ... attributable to the defendant," *Barker,* 407 U.S. at 529, 92 S.Ct. at 2191, is an entirely different matter. *See also id.* at 531, 92 S.Ct. at 2192 ("[c]losely related to length of delay is the reason the government assigns to justify the delay"; differentiating "deliberate attempt" by government to hamper defense, a "neutral reason" like overcrowded courts or negligence, and a "valid" justification, such as a missing witness).

Nonetheless, Sandoval assumes that the balancing framework should be applied to him. He argues that he was not truly unavailable for trial, and that if the government had exercised due diligence it could easily have located him and avoided violating his speedy trial right. *See, e.g., Rayborn,* 858 F.2d at 90 (the government "is under an obligation to exercise due diligence in attempting to locate and apprehend the accused, even if he is a fugitive who is fleeing prosecution"). The *Rayborn* formulation of the government's obligation, however, is not entirely consistent with Supreme Court precedent. It is true that the government has a constitutional duty to bring an accused to trial "[u]pon the [accused]'s demand." *Smith v. Hooey,* 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed.2d 607 (1969).[7] Once that speedy trial demand is made, the government is obligated to make a "diligent, good-faith effort" to bring the accused before the court for trial. *Id.* Sandoval admits that he did not assert his speedy trial right until after his April 1991 arrest.

■■■ On the other hand, an accused does not waive her Sixth Amendment speedy trial right by failing to assert it. *Barker,* 407 U.S. at 528, 92 S.Ct. at 2191. If the accused has not herself caused the post-indictment, pretrial delay, the failure to demand a speedy trial is merely "one of the factors to be considered in an inquiry into the deprivation of the right." *Id.* at 528–29, 92 S.Ct. at 2191. If, however, the delay is attributable to the defendant, standard waiver doctrine applies. *Id.* at 529, 92 S.Ct. at 2191. An accused might intentionally relinquish her speedy trial right to enable her attorney to more thoroughly prepare for trial, or might intentionally abandon the right as a byproduct of attempting to avoid prosecution altogether. As one judge put it, "[a] true fugitive, whose location is unknown, or who is successfully resisting government efforts to bring him into the jurisdiction, will not be able to obtain dismissal of an indictment. This is as it should be. Otherwise, the courts would be sanctioning the playing of games by fugitives." *United States v. Salzmann,* 548 F.2d 395, 404 (2d Cir.1976) (Feinberg, J., concurring); *see also Barker,* 407 U.S. at 536, 92 S.Ct. at 2194 ("barring extraordinary circumstances, we would be

---

7. The petitioner in *Smith v. Hooey* was incarcerated in a federal prison when he was indicted on a state charge. He repeatedly requested—initially by letter, later by more formal motions, and then by filing a motion to dismiss for want of prosecution—that the state court system provide him with a speedy trial. *Smith v. Hooey,* 393 U.S. at 375, 89 S.Ct. at 575. The Supreme Court overruled a state supreme court holding that the accused's confinement in a federal prison absolves the state from any Sixth Amendment speedy trial duty. *Id.* at 377, 383, 89 S.Ct. at 576, 579. "Upon the petitioner's demand," the Court ruled, "Texas had a constitutional duty to make a diligent, good-faith effort to

bring him before the Harris County court for trial." *Id.* at 383, 89 S.Ct. at 579.

The petitioner's federal imprisonment did not matter so much as his insistence that the state courts resolve the charges against him, one way or another. In comparing the underlying facts to hypothetical situations, the Court noted that there could be "no doubt that if the petitioner in the present case had been at large for a six-year period following his indictment, and had repeatedly demanded that he be brought to trial, the State would have been under a constitutional duty to try him." *Id.* at 377, 89 S.Ct. at 576 (citing *Klopfer v. North Carolina,* 386 U.S. 213, 219, 87 S.Ct. 988, 991, 18 L.Ed.2d 1 (1967)).

reluctant indeed to rule that a defendant was denied this constitutional [speedy trial] right on a record that strongly indicates . . . that the defendant did not want a speedy trial").

*Doggett v. United States*, —— U.S. ——, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), suggests that the government does have some obligation to attempt to locate a fugitive defendant and bring him to trial. In that case, the government did not arrest the suspected drug dealer until eight and one-half years after he was indicted for conspiring to import and distribute cocaine. *Id.* at ——, 112 S.Ct. at 2689–90. The Court utilized the four-part *Barker* test to reverse Doggett's conviction and remand for further consistent proceedings. *Id.* at ——, 112 S.Ct. at 2690–94. It emphasized in discussing the fourth factor that the government's negligence in failing to locate Doggett was not "automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *Id.* at ——, 112 S.Ct. at 2693. The Court also stressed the government's explicit concession below that Doggett left the United States after being indicted, but before being arrested or learning that he had been indicted. *Id.* at ——, 112 S.Ct. at 2691.

 Accepting the notion that the government has some obligation, even in a case like this, to find a fugitive defendant and bring him to trial, we find that the district court was not clearly erroneous in holding that the government satisfied its obligation in this case. There is no requirement that law enforcement officials "make heroic efforts to apprehend a defendant who is purposefully avoiding apprehension." *Rayborn*, 858 F.2d at 90. U.S. drug interdiction authorities received infor-mation (including reports from the DEA office in Guadalajara) that Sandoval was incarcerated in Mexico, and that he had no intention of returning to the United States upon his release. The authorities periodically inquired as to Sandoval's whereabouts with Mexican authorities and received the same information. The district court found that this did not put the government on notice that it should take any further steps to verify his whereabouts or look elsewhere. The 1970 warrant for Sandoval's arrest remained in effect and was the basis for his 1991 arrest.

As important, and unlike the accused in *Doggett*, Sandoval was well aware of the indictment against him. He skipped bail and became a fugitive to avoid prosecution. On the record before us, we find no violation of Sandoval's Sixth Amendment speedy trial right.[8]

### B. Entrapment instruction.

 Sandoval also claims that *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), changed entrapment law to his detriment. He insists that to avoid an ex post facto application of the law, he was entitled to have the district court give a pre-*Russell* jury instruction. Sandoval's heroin offenses took place in August and September 1970, prior to the decision in *Russell*. Whether a jury instruction misstates the relevant and applicable law is a legal question, and we review such questions de novo. *United States v. Hernandez–Escarsega*, 886 F.2d 1560, 1570 (9th Cir.1989), *cert. denied*, 497 U.S. 1003, 110 S.Ct. 3237, 111 L.Ed.2d 748 (1990); *see also Wallace v. Christensen*, 802 F.2d 1539, 1552 (9th Cir.1986) (en banc) (constitutional claims reviewed de novo).

---

8. Sandoval also contends that the post-indictment, pretrial delay violated his Fifth Amendment due process right. He relies entirely on the authority of *United States v. Valentine*, 783 F.2d 1413, 1416–17 (9th Cir.1986), a *pre*-indictment delay case.

As *Arnold v. McCarthy*, 566 F.2d 1377, 1381–82 (9th Cir.1978), makes clear, the Fifth Amendment due process and Sixth Amendment speedy trial safeguards apply at "different stages of the investigation and prosecution of a crime." *Id.* at 1381. The pre-arrest or pre-indictment stage is the due process arena. *Id.* An "accused," however (someone who has been either arrested or indicted), is protected from delay not by the Fifth Amendment, but rather by the "more stringent requirements of the Sixth Amendment speedy trial right." *Id.* at 1382; *see also Prantil v. California*, 843 F.2d 314, 318 (9th Cir.) ("A pre-indictment delay, unlike a delay in bringing a charged defendant to trial, is 'tested by general proscriptions of due process.'") (quoting *Arnold*, 566 F.2d at 138), *cert. denied*, 488 U.S. 861, 109 S.Ct. 158, 102 L.Ed.2d 129 (1988).

We conclude that *Russell* did not change entrapment law. The opinion of the Court is unambiguous on this point:

> This Court's opinions in *Sorrells v. United States,* [287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932) ], and *Sherman v. United States,* [356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) ], held that the principal element in the defense of entrapment was the defendant's predisposition to commit the crime. Respondent.... argues that the jury's refusal to find entrapment ... should be overturned and the views of Justices Roberts and Frankfurter, in *Sorrells* and *Sherman,* respectively, which make the essential element of the defense turn on the type and degree of governmental conduct, be adopted as the law.
>
> We decline to overrule these cases.

*Russell,* 411 U.S. at 433, 93 S.Ct. at 1643; *see also Hampton v. United States,* 425 U.S. 484, 488–89, 96 S.Ct. 1646, 1649–50, 48 L.Ed.2d 113 (1976) (plurality opinion) (describing *Russell* as "reaffirm[ing] the principle of *Sorrells* ... and *Sherman*").

The district court's decision in Sandoval's case to give a supplemented version of Ninth Circuit Model Jury Instruction 6.02, rather than Sandoval's proposed instruction, did not violate the ex post facto clause.[9]

### C. *District court's response to jury question.*

■ During its deliberations, the jury sent the trial judge a note, which read: "The jury requests the following: Because of the interpretation of the defendant, the jury would like to know if it is possible to review the defendant's testimony." Sandoval ER at 41. The district judge told the lawyers that he was "prepared to go forward and have [Sandoval's] testimony reread to the jury." *Id.* Sandoval's attorney inquired as to the possibility of getting the jury to narrow its request. *Id.* He objected to a re-reading "in toto." *Id.* at 42.

After being questioned by the judge, the jury sent another note, which read: "The jury requests the following: One, Sandoval's testimony about meeting under the bridge; two, Sandoval's testimony about meeting in a car prior to the arrest at the time the kilo was purchased." *Id.* at 44. The judge told the lawyers that he had directed his court reporter to "identify portions of the transcript within Sandoval's testimony which reflects the bridge and car incident"; those portions would be "reread to the jury." *Id.*

We review for abuse of discretion the "decision to honor a request that the court reporter read his notes of certain testimony for the jury's benefit after deliberation has begun." *United States v. Birges,* 723 F.2d 666, 671 (9th Cir.), *cert. denied,* 466 U.S. 943, 104 S.Ct. 1926, 80 L.Ed.2d 472, *cert. denied,* 469 U.S. 863, 105 S.Ct. 200, 83 L.Ed.2d 131 (1984). Sandoval has some burden to demonstrate that any error in responding to the jury's communications "affected the outcome of the trial." *Id.*

Sandoval's counsel objected to the district court's decision to have certain portions of the transcript re-read, submitting that the jurors' memories should control. Nonetheless, the court directed the court reporter to read back to the jury those parts of the testimony responsive to the jury's communication. The district court noted that the reporter could not simultaneously "report that which he's reading." Sandoval ER at 46. However, following the re-reading, the court explicitly found that the portions read were those "that the court finds to be an appropriate response" to the jury's inquiries. *Id.* He also cautioned the jury to remember that "all the testimony offered, all the exhibits received

---

9. The district court gave the following instruction:

A person is entrapped when the person has no previous intention to violate the law and is persuaded to commit a crime by government agents.

On the other hand, where a person is already willing to commit a crime, it is not entrapment if government agents merely provided an opportunity to commit the crime.

The government has the burden of proof to show no entrapment existed beyond a reasonable doubt.

Government ER at 173.

into evidence, is for you to consider in determining guilt or innocence." *Id.*

The district court's decisions regarding the re-reading of portions of the testimony do not amount to an abuse of discretion. *See Birges*, 723 F.2d at 671. He consulted with the lawyers before exercising his discretion, *id.*, cautioned the jurors about giving full consideration to the "entirety of the testimony," and offered to have additional portions, or the entire testimony, re-read "[i]f it should come to pass that you [the jurors] feel that more should be read." Sandoval ER at 46. His actions were cautious and appropriate. *See United States v. Nickell*, 883 F.2d 824, 829 (9th Cir.1989) ("In deciding whether to allow the jury to review testimony during deliberations, the court should avoid giving undue emphasis to particular testimony."); *United States v. Guess*, 745 F.2d 1286, 1288 (9th Cir.1984), *cert. denied*, 469 U.S. 1225, 105 S.Ct. 1219, 84 L.Ed.2d 360 (1985).

**AFFIRMED.**