BYBEE, Circuit Judge,
concurring:
Appellant Paul Mendoza was found guilty by a jury of his peers of filing false tax returns for failing to report over $285,000 in funds he embezzled from his employer. Today we are forced to overturn his conviction. I join the majority opinion because I believe we dutifully applied Doggett v. United States, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); I write separately because the facts before us demonstrate how Doggett requires a presumption unsupported by the record. Because the government did not make even a single effort to notify Mendoza of his indictment, we must find the government responsible for the constitutionally impermissible eight-and-a-half-year delay between Mendoza’s indictment and arrest.[1] Nevertheless, we might not have been required to set aside Mendoza’s jury verdict but for Doggett’s requirement that we presume that the delay prejudiced Mendoza. In this case, it appears Mendoza suffered no prejudice.
Mendoza was a manager at a medical clinic in Los Angeles, where his duties included depositing clients’ checks to the clinic’s bank account. Instead, Mendoza kept the money for himself. Over a two year period, Mendoza managed to embezzle $285,135.26, none of which he chose to report to the IRS. After being served, through his attorney, with a subpoena to provide handwriting and fingerprint exemplars for the IRS investigation in 1995, Mendoza left his wife and child behind and fled to the Philippines.
The IRS filed an indictment in April 1996, but, by its own admission, never attempted to contact Mendoza to inform him of this turn of events or otherwise bring him to trial. Because Mendoza never provided contact information, no IRS agent attempted to contact him directly. No agent attempted to call the phone number in the Philippines his wife had provided, for relatives with whom she believed he was in contact. No agent attempted to notify his wife of the indictment — even *766 though when Special Agent Lynn spoke with his wife on January 4, 1996, Mendoza himself called the IRS just a few days later and asked for Special Agent Lynn. The only step the government took was to place notices in law enforcement databases about the indictment and the outstanding warrant for Mendoza’s arrest — in other words, the government told other law enforcement agencies about the indictment but not Mendoza himself.[2]
Mendoza was ultimately found guilty by a jury on two counts of filing a false income tax return, and was sentenced to thirteen months’ imprisonment and ordered to pay the IRS restitution in the amount of $79,837.90. On appeal, Mendoza does not challenge the sufficiency of the government’s evidence against him; nor does he argue that any aspects of his jury trial deprived him of due process. Rather, despite the fact that Mendoza fled to the Philippines and hampered the IRS investigation against him, Mendoza argues that we must reverse his conviction because he was denied his Sixth Amendment right to a speedy trial. Under Doggett, he is correct.
Doggett holds the government responsible for post-indictment delay if it is “negligent” in its attempt to bring the defendant to trial, however, Doggett does not define the duty of care the government owes. 505 U.S. at 652-53, 112 S.Ct. 2686. The Sixth Amendment does not require the government to make “heroic efforts to apprehend a defendant who is purposefully avoiding apprehension.” United States v. Sandoval, 990 F.2d 481, 485 (9th Cir.1993) (internal quotation and citation omitted). In this case, the government may have been understandably frustrated by the fact that Mendoza fled the country and refused to provide contact information. Nonetheless, the government knew that within a few days of speaking to his wife, Mendoza was somehow informed of both the fact that the IRS was trying to reach him and that the particular agent was named Special Agent Lynn. Moreover, the government knew that Mendoza was able to initiate responsive communication with the government just days after the government’s contact with his wife. Thus, Mendoza, though half-way around the world, was never more than a pay-phone call away from the IRS. The fact that Mendoza called the government twice soon after learning an IRS agent was trying to reach him may even suggest that, while attempting to maintain a healthy distance between himself and the IRS, Mendoza was not attempting to disappear completely.
Because the government believed that there was no extradition treaty that would permit the IRS to bring Mendoza to trial for tax offenses against his will, notifying Mendoza of his indictment and asking him to return to the United States to face the charges against him might have been the IRS’s only hope of locating him and bringing him to trial. At the very least, it would have put Mendoza on notice that he had been indicted, so that any subsequent post-indictment trial delay would have been attributable to Mendoza’s own decision to remain a fugitive, and not to the government’s negligence. See Sandoval, 990 F.2d at 484 (holding that there was no speedy trial violation because “unlike the accused in Doggett, Sandoval was well aware of the indictment against him [and] skipped bail and became a fugitive to avoid prosecution”). On these facts, it is quite *767 possible that even a single additional communication from Special Agent Lynn to Mendoza’s wife, in which he notified her of the indictment and asked her to let Mendoza know he needed to contact the IRS, might have been sufficient for the government to discharge its duty of care under Doggett. Unfortunately, we were not given the opportunity to rule on this question because the government did not take even these small steps.
Yet even the government’s negligence in this case might not have required us to overturn Mendoza’s jury conviction absent Doggett’s requirement that we presume that the defendant was prejudiced where the delay was attributable to the government’s negligence and far in excess of the threshold needed to state a speedy trial claim. See 505 U.S. at 657-58, 112 S.Ct. 2686. Unreasonable post-indictment delay may cause three types of prejudice: oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused’s defense will be impaired by dimming memories and loss of exculpatory evidence. Id. at 654, 112 S.Ct. 2686. The eight-and-a-half year delay between Mendoza’s indictment and his arrest did not implicate oppressive pretrial incarceration, as Mendoza lived freely in the Philippines during that time. Mendoza suffered no “anxiety and concern [as an] accused” because he remained blissfully unaware that he had been indicted. Id.
The only form of prejudice Mendoza could possibly have suffered would be an impairment of his ability to prepare his defense. The Doggett Court stated that “the impairment of one’s defense is the most difficult form of speedy trial prejudice to prove because time’s erosion of exculpatory evidence and testimony ‘can rarely be shown.’ ” 505 U.S. at 654, 112 S.Ct. 2686 (citing Barker v. Wingo, 407 U.S. 514, 532, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). The Court’s solution to this evidentiary problem was to require the court of appeals to “recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.” Id. The Court further held that it is in “the nature of the prejudice presumed” that we must make the presumption stronger as the length of the delay increases. Id. at 657, 112 S.Ct. 2686. We have interpreted Doggett’s directive, accurately, I believe, to mean that “no showing of prejudice is required when the delay is great and attributable to the government.” United States v. Shell, 974 F.2d 1035, 1036 (9th Cir.1992).
In Mendoza’s case, the facts strongly suggest he suffered no impairment in his ability to marshal his defense. Mendoza claims that he was prejudiced because much of the documentary evidence of his embezzlement has been destroyed. Yet, the government maintained all of the documentary evidence related to this case, including the checks Mendoza cashed to his own checking account, bank records for the seven bank accounts he controlled, and the accounting ledgers of the medical clinic. Mendoza has not introduced any evidence to suggest these records were incomplete or unreliable. Mendoza also claims he was unable to locate a key witness. Yet, the record shows that Mendoza made no attempt to locate, contact, or subpoena the witness, suggesting it was not the pretrial delay that caused the absence of this witness at trial. As for another key witness, there is evidence in the record that, after Mendoza learned this witness would not be “friendly” to his case, Mendoza called the witness in the Philippines and threatened to “bring him down” if he traveled to the United States to testify against him. Given the opportunity, we might rule that the record shows Mendoza’s ability to marshal a defense had *768 not been prejudiced. Unfortunately, Doggett does not permit us to reach this question.
If not for Doggett, I would uphold Mendoza’s conviction. I would hold that the pre-trial delay was attributable to the government’s negligence, but that Mendoza had not been prejudiced. Instead, I join the majority in holding that Mendoza’s speedy trial right was violated under Doggett. As the government closed in on Mendoza, he fled to the Philippines and hampered efforts to investigate and indict him. Today, however, Mendoza proves that under Doggett, you can still claim your right to a speedy trial has been violated if you run, but you don’t hide.

. Subsequent to Mendoza’s arrest, trial was further delayed by another year and a half due to Mendoza's own requests for continuanees. On appeal, however, Mendoza alleges the cognizable constitutionally impermissible post-indictment delay to be the eight-and-a-half year period from the date of his indictment, April 12, 1996, to the date of his arrest, October 14, 2004.

. Even this tactic appeared to be of limited utility, as even with notice of the arrest warrant out "in the system,” Mendoza was able to re-enter the United States in June of 2004 and was not arrested or informed of his indictment until October 13, 2004, eight and one-half years after it was first filed.