**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

PAUL MENDOZA,
            *Defendant-Appellant.*

No. 06-50447

D.C. No.
CR-96-00394-
RSWL

ORDER
AMENDING
OPINION AND
CONCURRENCE
AND AMENDED
OPINION AND
AMENDED
CONCURRENCE

Appeal from the United States District Court
for the Central District of California
Ronald S.W. Lew, District Judge, Presiding

Argued and Submitted
December 3, 2007—Pasadena, California

Filed May 8, 2008
Amended June 20, 2008

Before: Thomas G. Nelson, Richard A. Paez, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Thomas G. Nelson;
Concurrence by Judge Bybee

7117

## COUNSEL

Richard A. Levy, Torrance, California, for the defendant-appellant.

Alka Sagar, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

## ORDER

The opinion and concurrence filed May 8, 2008, slip op. 5135, are amended as follows:

1. At slip op. 5144, lines 7-12, delete the following sentences:

> However, the government in that case took additional steps beyond simply entering the defendant's arrest warrant into the law enforcement system. The government contacted Unsolved Mysteries and America's Most Wanted, which aired segments on the case over twenty times in the United States and at least once in Mexico. *Id*. at 1115.

Replace with the following sentence:

> However, the government in that case took additional steps beyond simply entering the defendant's arrest warrant into the law enforcement database system and the district court specifically found that the

government had been diligent in pursuing the defen-
dant.

2. At slip op. 5144, lines 13-15, delete the following sen-
tence:

> In contrast, in this case, the government made no
> effort beyond entering Mendoza's arrest warrant in
> the law enforcement database.

Replace with the following sentence:

> By contrast, in this case, the record is silent as to any
> efforts by the government to apprehend Mendoza
> beyond merely entering Mendoza's arrest warrant in
> the law enforcement database, and the evidence
> before the district court is insufficient to support a
> finding that the government conducted a serious
> effort to find Mendoza.

3. At slip op. 5149, lines 1-5, delete the following sentence:

> Because there was no extradition treaty that would
> permit the IRS to bring Mendoza to trial against his
> will, notifying Mendoza of his indictment and asking
> him to return to the United States to face charges
> against him might have been the IRS's only hope of
> locating him and bringing him to trial.

Replace with the following sentence:

> Because the government believed that there was no
> extradition treaty that would permit the IRS to bring
> Mendoza to trial for tax offenses against his will,
> notifying Mendoza of his indictment and asking him
> to return to the United States to face the charges
> against him might have been the IRS's only hope of
> locating him and bringing him to trial.

No further petitions for rehearing or rehearing en banc may be filed.

IT IS SO ORDERED.

---

## OPINION

T.G. NELSON, Circuit Judge:

Paul Mendoza appeals his convictions on two counts of subscribing to a false income tax return in violation of 26 U.S.C. § 7201. Mendoza contends that the eight-year delay between his indictment and his arrest violated his Sixth Amendment right to a speedy trial. He further contends that the district court plainly erred when it ordered restitution during sentencing. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

## I. Background

Mendoza's conviction was based on two income-tax returns that underreported his income. Mendoza worked for a management company in Los Angeles, California called Nobel Marketing Company where he was in charge of administering Nobel Medical Clinic. As the administrator, Mendoza was authorized to deposit clients' checks into the clinic's bank accounts, but he was not a signatory on the accounts.

During 1989 and 1990, Mendoza embezzled approximately $285,000 from the clinic by personally collecting some of the clinic's checks and depositing them into his own bank accounts or cashing the checks at a check-cashing company. The money from these transactions was not reported on his 1989 or 1990 tax returns.

During the Internal Revenue Service's ("IRS") investigation of Mendoza's failure to report the money on his income

tax returns, Mendoza left the United States and went to the Philippines. On June 19, 1995, prior to Mendoza's departure from the United States, IRS Special Agent Slotsve attempted to serve Mendoza with a Grand Jury subpoena for handwriting and fingerprint exemplars by serving the subpoena on Mendoza's attorney. When Mendoza failed to meet with Agent Slotsve on June 27, 1995, as required by the subpoena, Agent Slotsve again contacted the attorney. The attorney informed Agent Slotsve that he no longer represented Mendoza.

Based on previous correspondence with Mendoza's attorney, Agent Slotsve determined that Mendoza had left the Los Angeles area for Seattle, Washington. Agent Slotsve then sent the subpoena to IRS Special Agent Lynn in the Seattle area so that Agent Lynn could serve Mendoza. Agent Lynn called Mendoza's wife on January 4, 1996. Mendoza's wife informed Agent Lynn that Mendoza had left her and her children and had been living in the Philippines since June 1995. Mendoza's wife gave Agent Lynn a phone number for Mendoza's relatives in the Philippines.

After Agent Lynn spoke with Mendoza's wife and left a message for Mendoza at his sister's house in the Philippines, Mendoza returned Agent Lynn's phone call from the Philippines. Agent Lynn was not in the office so Mendoza spoke with an FBI agent, but refused to give the agent his contact information. On January 9, 2008, Mendoza called again from a pay phone in the Philippines and spoke with Agent Lynn. Mendoza stated that he was planning on returning to Seattle in two months and that he was in the Philippines selling property so he could defend himself in California. Mendoza refused to give Agent Lynn his contact information. Agent Lynn did not inform Mendoza that he wanted to serve him with a subpoena. After Agent Lynn spoke with Mendoza, he called Agent Slotsve to inform him of his conversation with Mendoza.

Mendoza was indicted on April 12, 1996. After the indictment, the government put a warrant out on the law enforcement database so that Mendoza would be detained when he attempted to return to the United States. The warrant was the only attempt the government made to apprehend Mendoza; the government made no attempt to contact Mendoza to inform him that he had been indicted.

Mendoza returned to the United States in June 2004, but was not arrested until October 13, 2004. After his arrest, Mendoza sought and received seven continuances of the scheduled trial date, from December 7, 2004, to March 14, 2006. On January 3, 2006, Mendoza filed a motion to dismiss the indictment because the eight-year delay between his indictment and his arrest violated his Sixth Amendment right to a speedy trial. The district court denied the motion, but did not make any factual findings, stating only: "This Court DENIES Defendant's Motion to Dismiss the Indictment finding that . . . (2) [ ] defendant Mendoza's speedy trial rights have not been violated."

Mendoza was found guilty on two counts of subscribing to a false income-tax return after a jury trial and was sentenced to a term of imprisonment of thirteen months and restitution in the amount of $79,837.90.

## II.   Mendoza's Right to a Speedy Trial

A district court's decision on a Sixth Amendment speedy trial claim is reviewed *de novo*. *United States v. Gregory*, 322 F.3d 1157, 1160 (9th Cir. 2003). Factual determinations underlying the claim are reviewed for clear error. *Id.*

**[1]** The Sixth Amendment guarantees that criminal defendants "shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. To determine whether a defendant's Sixth Amendment speedy trial right has been violated, we balance the following four factors: "[l]ength of delay, the reason

for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

None of these four factors are either necessary or sufficient, individually, to support a finding that a defendant's speed trial right has been violated. *Id*. at 533. Rather the factors are related and "must be considered together with such other circumstances as may be relevant." *Id.* Further, the balancing of these factors, and other relevant circumstances, "must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." *Id.*

### A. *Length of Delay*

**[2]** For speedy trial claims, the length of the "delay is measured from 'the time of the indictment to the time of trial.' " *United States v. Gregory*, 322 F.3d 1157, 1162 (9th Cir. 2003) (quoting *United States v. Sears, Roebuck & Co.*, 877 F.2d 734, 739 (9th Cir. 1989)). If the length of delay is long enough to be considered presumptively prejudicial, an inquiry into the other three factors is triggered. *Barker*, 407 U.S. at 530. Generally, a delay of more than one year is presumptively prejudicial. *See Gregory*, 322 F.3d at 1161-62.

**[3]** In this case, the indictment was filed on April 12, 1996, and the trial did not start until April 25, 2006. We find that this ten-year delay creates a presumption of prejudice and triggers an inquiry into the other three factors.

### B. *Reason for the Delay*

The government has "some obligation" to pursue a defendant and bring him to trial. *United States v. Sandoval*, 990 F.2d 481, 485 (9th Cir. 1993). If the government fulfills that obligation by pursuing a defendant with reasonable diligence, the defendant does not have a speedy trial claim. *Doggett v. United States*, 505 U.S. 647, 656 (1992). On the other hand,

if the government is negligent in pursuing the defendant, prejudice is presumed. *Id*. at 657.

The government has the primary, though not exclusive, responsibility to ensure that the defendant is brought to trial. *See Sandoval*, 990 F.2d at 482. If a defendant attempts to avoid detection, the government is not required to " 'make heroic efforts to apprehend a defendant who is purposefully avoiding apprehension.' " *Id*. at 485 (quoting *Rayborn v. Scully*, 858 F.2d 84, 90 (2d Cir. 1988)). However, if the defendant is not attempting to avoid detection and the government makes no serious effort to find him, the government is considered negligent in its pursuit. *See Doggett*, 505 U.S. at 653.

[4] In this case, the agent in charge of Mendoza's investigation made no effort to contact Mendoza to inform him that he had been indicted. The government had Mendoza's wife's telephone number and the telephone number of Mendoza's relatives in the Philippines. But rather than attempting to inform Mendoza that he had been indicted through those avenues, the government simply put a warrant out on the law enforcement database so that Mendoza would be detained when he returned to the United States.[1] As a result, Mendoza was not informed he had been indicted until more than eight years after the indictment.

Even though Mendoza left the country prior to his indictment, the government still had an obligation to attempt to find him and bring him to trial. After *Doggett*, the government was required to make some effort to notify Mendoza of the indictment, or otherwise continue to actively attempt to bring him to trial, or else risk that Mendoza would remain abroad while the constitutional speedy-trial clock ticked. However, the gov-

---

[1]For reasons not made clear in the record nor in oral argument, this warrant did not result in Mendoza being detained when he reentered the United States, but did eventually lead to his arrest.

ernment made no serious effort to do so. Further, there is no evidence that Mendoza was keeping his whereabouts unknown. Although he refused to give his own contact information, the government still had his relative's contact information. And when a government agent contacted Mendoza's wife and left a message with his sister, Mendoza returned the call from the Philippines on two different occasions.

**[5]** Nor does Mendoza's failure to return to the United States as he stated he would support the argument that he was deliberately avoiding contact with the government. Mendoza was unaware of the indictment, so he did not know that he needed to return. And it was not Mendoza's responsibility to contact the government during the investigation. Based on its previous success in contacting Mendoza, the government was negligent when it failed to attempt to inform Mendoza of the indictment by calling either the wife or the relative's telephone number. Therefore, the delay between Mendoza's indictment and arrest was caused by the government's negligence, and this factor weighs in favor of Mendoza.

Our recent decision in *United States v. Corona-Verbera*, 509 F.3d 1105 (9th Cir. 2007), does not alter this conclusion. In *Corona-Verbera*, the defendant was in Mexico and there was an almost eight-year delay between his indictment and his arrest. *Id*. at 1111. However, the government in that case took additional steps beyond simply entering the defendant's arrest warrant into the law enforcement database system and the district court specifically found that the government had been diligent in pursuing the defendant.

By contrast, in this case, the record is silent as to any efforts by the government to apprehend Mendoza beyond merely entering Mendoza's arrest warrant in the law enforcement database, and the evidence before the district court is insufficient to support a finding that the government conducted a serious effort to find Mendoza.

### C.   *Defendant's Assertion of Speedy Trial Right*

There is no evidence that Mendoza knew of his indictment, such as evidence that the government had attempted to notify Mendoza by leaving a message with his relatives. Therefore, Mendoza could assert his speedy trial right as to the eight-year period between his indictment and his arrest. *Cf. Sandoval*, 990 F.2d at 485 (holding that the defendant could not assert a speedy trial right under *Doggett* because he was "well aware of the indictment against him [and] skipped bail and became a fugitive to avoid prosecution").

**[6]** However, Mendoza did not assert his right to a speedy trial until after he made numerous requests for continuances and delayed the trial date by over a year. Because Mendoza caused this delay before his assertion of his speedy trial rights, this factor does not weigh in favor of Mendoza nor in favor of the government. *Corona-Verbera*, 509 F.3d at 1116.

### D.   *Prejudice*

The final factor is prejudice. The Supreme Court has recognized three forms of prejudice that can result from post-indictment delay: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) "the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 654 (quoting *Barker*, 407 U.S. at 532) (internal quotations omitted). "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.' " *Id.* (quoting *Barker*, 407 U.S. at 532).

This final form of prejudice is not only the most important, it is also the most difficult to prove because "time's erosion of exculpatory evidence and testimony 'can rarely be shown.' " *Id.* at 655 (quoting *Barker*, 407 U.S. at 532). In other words, excessive delays can "compromise[ ] the reliabil-

ity of a trial in ways that neither party can prove or, for that matter, identify." *Id.*

**[7]** Due to these concerns, "no showing of prejudice is required when the delay is great and attributable to the government." *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992) (citing *Doggett*, 505 U.S. at 657-58). Instead, we presume prejudice. *Id.* Further, "[t]he presumption that pretrial delay has prejudiced the accused intensifies over time." *McNeely v. Blanas*, 336 F.3d 822, 831 (9th Cir. 2003).

**[8]** If, in this case, the government had pursued Mendoza with reasonable diligence, his speedy trial claim would have failed unless he could show "specific prejudice to his defense." *Doggett*, 505 U.S. at 656. However, the government did not exercise due diligence. Instead, the government was negligent in pursuing Mendoza, and the eight-year delay between Mendoza's arrest and indictment was attributable to the government. There is, therefore, a strong presumption that Mendoza suffered prejudice, which the Government has not rebutted. *See id.* at 658 n.4 (stating that the absence of particularized trial prejudice "has not, and probably could not have, affirmatively proved that the delay left [the defendant's] ability to defend himself unimpaired").

## III.   Conclusion

After balancing the *Barker* factors, we conclude that Mendoza's Sixth Amendment speedy-trial right was violated. The eight-year delay between Mendoza's indictment and arrest was a result of the government's negligence, so we presume that Mendoza suffered prejudice. As a result, a dismissal of Mendoza's indictment is warranted.[2]

---

[2]Because we find that Mendoza's Sixth Amendment speedy-trial right was violated, we do not need to address his arguments related to sentencing.

Accordingly, we REVERSE and REMAND the case for proceedings consistent with this opinion.

---

BYBEE, Circuit Judge, concurring:

Appellant Paul Mendoza was found guilty by a jury of his peers of filing false tax returns for failing to report over $285,000 in funds he embezzled from his employer. Today we are forced to overturn his conviction. I join the majority opinion because I believe we dutifully applied *Doggett v. United States*, 505 U.S. 674 (1992); I write separately because the facts before us demonstrate how *Doggett* requires a presumption unsupported by the record. Because the government did not make even a single effort to notify Mendoza of his indictment, we must find the government responsible for the constitutionally impermissible eight-and-a-half-year delay between Mendoza's indictment and arrest.[1] Nevertheless, we might not have been required to set aside Mendoza's jury verdict but for *Doggett*'s requirement that we presume that the delay prejudiced Mendoza. In this case, it appears Mendoza suffered no prejudice.

Mendoza was a manager at a medical clinic in Los Angeles, where his duties included depositing clients' checks to the clinic's bank account. Instead, Mendoza kept the money for himself. Over a two year period, Mendoza managed to embezzle $285,135.26, none of which he chose to report to the IRS. After being served, through his attorney, with a subpoena to provide handwriting and fingerprint exemplars for

---

[1]Subsequent to Mendoza's arrest, trial was further delayed by another year and a half due to Mendoza's own requests for continuances. On appeal, however, Mendoza alleges the cognizable constitutionally impermissible post-indictment delay to be the eight-and-a-half year period from the date of his indictment, April 12, 1996, to the date of his arrest, October 14, 2004.

the IRS investigation in 1995, Mendoza left his wife and child behind and fled to the Philippines.

The IRS filed an indictment in April 1996, but, by its own admission, never attempted to contact Mendoza to inform him of this turn of events or otherwise bring him to trial. Because Mendoza never provided contact information, no IRS agent attempted to contact him directly. No agent attempted to call the phone number in the Philippines his wife had provided, for relatives with whom she believed he was in contact. No agent attempted to notify his wife of the indictment—even though when Special Agent Lynn spoke with his wife on January 4, 1996, Mendoza himself called the IRS just a few days later and asked for Special Agent Lynn. The only step the government took was to place notices in law enforcement databases about the indictment and the outstanding warrant for Mendoza's arrest—in other words, the government told other law enforcement agencies about the indictment but not Mendoza himself.[2]

Mendoza was ultimately found guilty by a jury on two counts of filing a false income tax return, and was sentenced to thirteen months' imprisonment and ordered to pay the IRS restitution in the amount of $79,837.90. On appeal, Mendoza does not challenge the sufficiency of the government's evidence against him; nor does he argue that any aspects of his jury trial deprived him of due process. Rather, despite the fact that Mendoza fled to the Philippines and hampered the IRS investigation against him, Mendoza argues that we must reverse his conviction because he was denied his Sixth Amendment right to a speedy trial. Under *Doggett*, he is correct.

---

[2]Even this tactic appeared to be of limited utility, as even with notice of the arrest warrant out "in the system," Mendoza was able to re-enter the United States in June of 2004 and was not arrested or informed of his indictment until October 13, 2004, eight and one-half years after it was first filed.

*Doggett* holds the government responsible for post-indictment delay if it is "negligent" in its attempt to bring the defendant to trial, however, *Doggett* does not define the duty of care the government owes. 505 U.S. at 652-53. The Sixth Amendment does not require the government to make "heroic efforts to apprehend a defendant who is purposefully avoiding apprehension." *United States v. Sandoval*, 990 F.2d 481, 485 (9th Cir. 1993) (internal quotation and citation omitted). In this case, the government may have been understandably frustrated by the fact that Mendoza fled the country and refused to provide contact information. Nonetheless, the government knew that within a few days of speaking to his wife, Mendoza was somehow informed of both the fact that the IRS was trying to reach him and that the particular agent was named Special Agent Lynn. Moreover, the government knew that Mendoza was able to initiate responsive communication with the government just days after the government's contact with his wife. Thus, Mendoza, though half-way around the world, was never more than a pay-phone call away from the IRS. The fact that Mendoza called the government twice soon after learning an IRS agent was trying to reach him may even suggest that, while attempting to maintain a healthy distance between himself and the IRS, Mendoza was not attempting to disappear completely.

Because the government believed that there was no extradition treaty that would permit the IRS to bring Mendoza to trial for tax offenses against his will, notifying Mendoza of his indictment and asking him to return to the United States to face the charges against him might have been the IRS's only hope of locating him and bringing him to trial. At the very least, it would have put Mendoza on notice that he had been indicted, so that any subsequent post-indictment trial delay would have been attributable to Mendoza's own decision to remain a fugitive, and not to the government's negligence. *See Sandoval*, 990 F.2d at 484 (holding that there was no speedy trial violation because "unlike the accused in *Doggett*, Sandoval was well aware of the indictment against him [and]

skipped bail and became a fugitive to avoid prosecution"). On these facts, it is quite possible that even a single additional communication from Special Agent Lynn to Mendoza's wife, in which he notified her of the indictment and asked her to let Mendoza know he needed to contact the IRS, might have been sufficient for the government to discharge its duty of care under *Doggett*. Unfortunately, we were not given the opportunity to rule on this question because the government did not take even these small steps.

Yet even the government's negligence in this case might not have required us to overturn Mendoza's jury conviction absent *Doggett*'s requirement that we *presume* that the defendant was prejudiced where the delay was attributable to the government's negligence and far in excess of the threshold needed to state a speedy trial claim. *See* 505 U.S. at 657-58. Unreasonable post-indictment delay may cause three types of prejudice: oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence. *Id.* at 654. The eight-and-a-half year delay between Mendoza's indictment and his arrest did not implicate oppressive pretrial incarceration, as Mendoza lived freely in the Philippines during that time. Mendoza suffered no "anxiety and concern [as an] accused" because he remained blissfully unaware that he had been indicted. *Id.*

The only form of prejudice Mendoza could possibly have suffered would be an impairment of his ability to prepare his defense. The *Doggett* Court stated that "the impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.' " 505 U.S. at 654 (citing *Barker v. Wingo*, 407 U.S. 514, 532 (1972)). The Court's solution to this evidentiary problem was to require the court of appeals to "recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.* The Court further

held that it is in "the nature of the prejudice presumed" that we must make the presumption stronger as the length of the delay increases. *Id.* at 657. We have interpreted *Doggett*'s directive, accurately, I believe, to mean that "no showing of prejudice is required when the delay is great and attributable to the government." *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992).

In Mendoza's case, the facts strongly suggest he suffered no impairment in his ability to marshal his defense. Mendoza claims that he was prejudiced because much of the documentary evidence of his embezzlement has been destroyed. Yet, the government maintained all of the documentary evidence related to this case, including the checks Mendoza cashed to his own checking account, bank records for the seven bank accounts he controlled, and the accounting ledgers of the medical clinic. Mendoza has not introduced any evidence to suggest these records were incomplete or unreliable. Mendoza also claims he was unable to locate a key witness. Yet, the record shows that Mendoza made no attempt to locate, contact, or subpoena the witness, suggesting it was not the pre-trial delay that caused the absence of this witness at trial. As for another key witness, there is evidence in the record that, after Mendoza learned this witness would not be "friendly" to his case, Mendoza called the witness in the Philippines and threatened to "bring him down" if he traveled to the United States to testify against him. Given the opportunity, we might rule that the record shows Mendoza's ability to marshal a defense had not been prejudiced. Unfortunately, *Doggett* does not permit us to reach this question.

If not for *Doggett*, I would uphold Mendoza's conviction. I would hold that the pre-trial delay was attributable to the government's negligence, but that Mendoza had not been prejudiced. Instead, I join the majority in holding that Mendoza's speedy trial right was violated under *Doggett*. As the government closed in on Mendoza, he fled to the Philippines and hampered efforts to investigate and indict him. Today,

however, *Mendoza* proves that under *Doggett*, you can still claim your right to a speedy trial has been violated if you run, but you don't hide.