**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Stella Maudine NICKELL,
Defendant–Appellant.**

No. 88–3132.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 8, 1989.

Decided Aug. 29, 1989.

Thomas Hillier, Federal Public Defender, Seattle, Wash., for defendant-appellant.

Joanne Y. Maida, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before SCHROEDER, BEEZER and BRUNETTI, Circuit Judges.

SCHROEDER, Circuit Judge:

This is an appeal from a conviction of tampering with a consumer product in violation of 18 U.S.C. § 1365 (Supp. I 1983). The defendant was charged with, and con-victed of, five counts of implanting potassium cyanide in packages of over-the-counter pain medications. This tampering resulted in the deaths of two victims, the defendant's husband and another woman unknown to the defendant who purchased the product in a store. The conviction was entered after a jury verdict in a highly-publicized trial.

It is remarkable that in this ably-presented appeal none of the claimed points of error concern rulings of the district court during the course of the trial itself. The issues in this appeal relate solely to the conduct of jurors during voir dire and deliberations, and the conduct of the trial judge during jury deliberations. The most significant issue is whether the district court delivered more than one *Allen*-type charge to the jury in violation of the law of this circuit. We affirm.

### Juror Holliday

A number of issues concern the conduct of one particular juror, Laurel Holliday. We must decide first whether the district court should have excused Holliday after she reported a contact from an unknown telephone caller during jury deliberations, and second, whether the district court should have granted the defendant a new trial after press reports indicated that Holliday may not have given an altogether complete response to voir dire questioning.

The government attempted unsuccessfully throughout the trial to introduce into evidence the fact that Stella Nickell failed a polygraph examination. After the jury had been deliberating for one week, juror Holliday informed the court that she had received a phone call over the weekend in which the caller said "don't you know that she failed the lie detector test?" and hung up.

When the government suggested that juror Holliday be excused, the defense asked that she be allowed to remain on the jury. On inquiry from the court, Holliday testified that she would be able to put the substance of the phone call aside and decide the case on the evidence introduced at

trial only. The district court allowed her to remain on the jury.

■ Nickell now contends that the district court should have excused Holliday from the jury, arguing that she did not knowingly and intelligently waive her objection to Holliday because a separate problem concerning Holliday's answers on voir dire did not surface until after the verdict was in and judgment had been entered. Whatever the merits of the voir dire issue, discussed next, the appellant is not entitled to have the judgment set aside on the basis of the district court's ruling on the telephone call. There was a knowing and intelligent waiver of any challenge to the juror's qualifications based on the receipt of the phone call. Defense counsel stated at the time that he had discussed the available alternatives with his client, and was waiving objection to Holliday's continued presence on the jury.

■ We therefore turn to the issue regarding juror Holliday that surfaced during the pendency of the defense's post-judgment motion for new trial. Nickell contends that the district court was required to grant the motion for new trial after it was revealed in the press that juror Holliday may have given misleading responses to questioning on voir dire. During voir dire examination the following exchange took place between the court and Ms. Holliday:

Question (by the court): Have you yourself, by chance, or anyone you know, been the victim of a product tampering incident?

Answer (Holliday): No.

Ms. Holliday also stated that she had no opinion as to whether the crimes charged had been committed and that there was nothing in her life experience that would affect her ability to be an impartial juror.

After the verdict and prior to the hearing on the defense's motion for a new trial, it was revealed in the press that Ms. Holliday had been involved in a lawsuit against Pepperidge Farms concerning a contaminated product. The lawsuit arose out of an incident that occurred more than a year and a half before this trial began, when Holliday bit into a cracker and swallowed a foreign object in the cracker. In her deposition for that lawsuit, about ten months before the trial in this case began, she testified that at the time she bit into the cracker, she "figured I was dead," and noted that "this was right after the cyanide poisonings in Auburn," the same poisonings involved in this case. In the deposition for that suit, she had also stated that the event had caused her trauma, paranoia and anxiety. The suit settled some two months before jury selection in this case began.

At the hearing on the appellant's motion for a new trial in this case, Holliday stated that before jury selection began, she talked to a friend who worked for a Seattle newspaper about the possibility of writing an article about this case should she be selected to serve on the jury. Juror Holliday further said that she wondered whether the experience with the cracker and subsequent litigation might disqualify her as a juror in this case and that during voir dire, she "wanted to hear how things would be asked." She further explained at the hearing that when she was asked whether she had ever been involved in a product tampering incident, she said she had not because her lawsuit was not a product tampering case, but a case of contamination during manufacture. Tests on the product in her case had revealed that the foreign matter had been baked into the cracker during manufacture.

The district court ruled that a new trial was not required because Holliday's response to the question was not false. On appeal Nickell contends that the district court erred, because under applicable standards Holliday's response need not have been false for a new trial to be required. Nickell argues that Holliday's response was sufficiently misleading to require reversal on the basis of an impermissibly biased jury.

The most recent Supreme Court decision concerning the standard for reversal due to the denial of an impartial jury is *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984). In *McDonough,* the

defendants in a products liability case appealed the denial of their motion for a new trial after the entry of a jury verdict against them. The defendants contended that one juror's failure to disclose an injury to his son during questioning on voir dire had deprived them of their right to trial by an impartial jury. *See* 464 U.S. at 549–50, 104 S.Ct. at 846–47. Defense counsel had addressed the following question to the six-member jury:

> Now, how many of you have yourself or any members of your immediate family ... sustained any injuries whether it was an accident at home, or on the farm or at work that resulted in any disability or prolonged pain and suffering ...?

*Id.* at 550, 104 S.Ct. at 847. One juror did not disclose that his son had suffered a broken leg as a result of the explosion of a truck tire.

The court held that to obtain a new trial based upon less than truthful answers during voir dire, "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *Id.* at 556, 104 S.Ct. at 850. This court has applied the *McDonough* test to charges of lack of an impartial jury in a criminal trial in *United States v. Aguon,* 851 F.2d 1158, 1170 (9th Cir.1988) (en banc).

The district court correctly ruled that the juror's response in this case did not meet the first requirement of the *McDonough* test. We see no basis for a finding by the district court that the juror deliberately concealed information as appellant contends. There is, as Holliday supposed, a significant difference between a product contamination case, such as the suit Holliday had been involved in earlier, and a product tampering case. Holliday was asked only whether she, or any member of her family, had been involved in a product tampering case. It is difficult to understand what response by the juror would have been more appropriate than her denial. There was no basis for granting a new trial based on dishonest statements by Holliday during voir dire.

Because Nickell has not demonstrated that Holliday answered dishonestly material questions on voir dire, thus providing no basis for an inference that Holliday was biased, we need not reach Nickell's contention that the district court violated Fed.R. of Evid. 606(b) by inquiring into Holliday's subjective impressions during jury deliberations. Even if that inquiry was improper, any error was harmless, because there was an independent basis for the court's ruling that Holliday was not impermissibly biased. Nickell also contends that the district court violated Rule 606(b) by considering a stipulation entered into by the parties that Holliday was the only juror who voted at any time to acquit. In ruling that Nickell was not prejudiced by Holliday's presence on the jury, the district court noted that this stipulation was persuasive evidence that Holliday was not biased against the defendant. Because there was no basis for a finding of bias, this inquiry was unnecessary, and cannot be a ground for reversal. Moreover, any objection to the court's considering the fact that Holliday was the holdout juror was waived when the defense entered into the stipulation during the hearing on Nickell's motion for a new trial.

### The Allen Instruction

Finally, Nickell contends that the district court committed reversible error by giving two *Allen*-type instructions to the jury during its deliberations. On the afternoon of Friday, May 6, after deliberating for three days, the jury reported itself deadlocked. The court at that point decided to accede to an earlier request by the jury to reread portions of the trial transcript. The court advised the jury that it would obtain the relevant portions of the trial transcript for them over the weekend, and would leave it to their discretion whether they wished to continue deliberating that afternoon, or adjourn until Monday morning. The court then gave the jury the following instruction:

> I want to remind you again that when you do deliberate, now or Monday, or both, that you are to discuss the case

with your fellow jurors to reach agreement if you can do so. Your verdict, whether guilty or not guilty, must be unanimous. Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors. Do not be afraid to change your opinion if the discussion persuades you that you should, but do not come to a decision simply because other jurors think it's right. It is important that you attempt to reach a unanimous verdict, but of course only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Now, it is physically and mentally tiring to do the work that you have done these last three weeks. You have expended a good deal of time and effort already, as has everyone else who has worked on the trial. We should all do our best to get the case decided, if it is possible to do that, under the instructions as given and bearing in mind the parts just read to you.

The members of the jury decided to adjourn and resume deliberations on Monday. On Monday morning the requested portions of the trial transcript were read to the jury. Before excusing the jury to resume further deliberations, the court instructed them as follows:

Now, members of the jury, please make a fresh start when you resume your deliberations. Consider the indictment one count at a time. Remember that you are not partisans; you are judges, judges of the facts. You should make every reasonable effort to reach agreement as to what the truth is and what the verdict should be. In doing that, you should not be reluctant to change an opinion expressed earlier if a review of the evidence and the instructions and discussion with your fellow jurors fairly convinces you that you should do so.

■ The term *"Allen"* or "dynamite" charge is used to describe a supplemental instruction given by the court to encourage a jury to reach a verdict after that jury has been unable to agree after some period of deliberation. The original form of the instruction was approved by the Supreme Court in *Allen v. United States,* 164 U.S. 492, 501, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896). *Allen* instructions have been repeatedly criticized as constituting an unwarranted intrusion by the court upon the province of the jury. Three federal circuits have barred the use of *Allen* instructions in the original form. *See United States v. Silvern,* 484 F.2d 879, 883 (7th Cir.1973)(en banc); *United States v. Thomas,* 449 F.2d 1177, 1186–87 (D.C.Cir.1971)(en banc); *United States v. Fioravanti,* 412 F.2d 407, 420 (3d Cir.), *cert. denied,* 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969). This circuit has held that the use of an *Allen* instruction, is not, in itself, reversible error. *See, e.g., United States v. Beattie,* 613 F.2d 762, 764 (9th Cir.), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980). In *United States v. Seawell,* 550 F.2d 1159, 1163 (9th Cir.1977), however, we noted that "[a] single [modified] *Allen* charge, without more, stands at the brink of impermissible coercion." We held in *Seawell* that it is reversible error to repeat an *Allen* charge after a jury has reported itself deadlocked and has not itself requested a repetition of the instruction. *Id.*

■ The harm which we avoid with the *Seawell* rule is the overwhelmingly coercive effect of the district court's giving a second *Allen* charge after the jury has deadlocked a second time. We said in *Seawell* that:

[r]epetition of the charge, together with rejection of the jury's second report of deadlock, is almost certain to convey the thought that by failing to come to an agreement—by once again reporting themselves at impasse—the jurors have acted contrary to the earlier instruction as that instruction was properly to be understood. ("Apparently you didn't listen to what I said before, so I'll repeat it.") Given a second time, not at the

request of the jury but at the instance of the judge, the charge no longer serves as an instruction; no matter how it may be softened it becomes a lecture sounding in reproof.

*United States v. Seawell,* 550 F.2d at 1163.

In this case the danger of reproof and coercive disapproval of further deliberations inherent in a second instruction after a second report of deadlock does not exist. There was no intervening deliberation by the jury after the *Allen* charge was first given before the weekend recess. There was no second deadlock. In these circumstances there could have been no suggestion of criticism of intervening behavior by the jury in the second supplemental instruction, since the judge addressed the jury the second time only as a reminder of the instructions given before the break. In this case, the remarks of the judge before the jury resumed its deliberations after the break can be viewed not as a second modified *Allen* charge, but as a continuation of the first. The threat of coercion that the *Seawell* rule is designed to prevent was not presented in this case.

The situation here is more analogous to the situation in *United States v. Armstrong,* 654 F.2d 1328 (9th Cir.1981), *cert. denied,* 454 U.S. 1157, 102 S.Ct. 1032, 71 L.Ed.2d 315 (1982), than it is to *Seawell.* In *Armstrong,* the trial court included a modified *Allen* instruction as part of its initial charge to the jury, and after impasse occurred, reminded the jury of that portion of the instructions. *Id.* 654 F.2d at 1333–34. We held that giving the supplemental instruction was not error under *Seawell,* because the charge to the jury after impasse was only a reminder of the pre-deliberation instruction, and there had been only one impasse to which any *Allen* charge was directed. *Id.* 654 F.2d at 1335. Judge Merrill, the author of *Seawell,* concurred separately in *Armstrong* to emphasize that the *Seawell* rule applies when "the charge is given a second time in response to a second report of deadlock," because in those circumstances, "it does not serve a purpose of assistance or instruction." 654

F.2d at 1337 (Merrill, J., concurring). In this case, as a reminder of the jury's duties after a recess, the charge did serve the purpose of assistance and instruction.

The only remaining contention we need to address is the claim that the district court abused its discretion in permitting the jury to review excerpts of a witness's testimony during deliberations. The decision to reread testimony to the jury, or to refuse a request by the jury to do so, is within the sound discretion of the trial court. *See United States v. King,* 552 F.2d 833, 850 (9th Cir.1976), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977). In deciding whether to allow the jury to review testimony during deliberations, the court should avoid giving undue emphasis to particular testimony. *United States v. Binder,* 769 F.2d 595, 600 (9th Cir.1985).

The trial court made an effort to avoid undue emphasis on any single portion of the witness's testimony by including excerpts from both the direct and cross-examination. The defendant has failed to point to any testimony in the record that would indicate that the portion reread to the jury misled the jury on a material issue. There was no abuse of discretion.

AFFIRMED.