**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

v.

CALVIN BRYAN EVANSTON,
                    *Defendant-Appellant.*

No. 10-10159

D.C. No.
3:09-cr-08018-
GMS-1

OPINION

Appeal from the United States District Court
for the District of Arizona
G. Murray Snow, District Judge, Presiding

Argued and Submitted
April 11, 2011—San Francisco, California

Filed July 5, 2011

Before: Alex Kozinski, Chief Judge, Michael Daly Hawkins
and Ronald M. Gould, Circuit Judges.

Opinion by Judge Hawkins

## COUNSEL

Jennifer E. Green, Assistant United States Attorney, Phoenix, Arizona, for the plaintiff-appellee.

Philip E. Hantel, Phoenix, Arizona, for the defendant-appellant.

## OPINION

HAWKINS, Senior Circuit Judge:

In a case of first impression, we examine whether a district court may, over defense objection and after the administration of an unsuccessful *Allen*[1] charge, inquire into the reasons for

---

[1]An *Allen* charge, the original concept of which was approved by the Supreme Court in *Allen v. United States*, 164 U.S. 492, 501-02 (1896), is

a trial jury's deadlock and then permit supplemental argument focused on those issues, where the issues in dispute are factual rather than legal. We conclude that allowing such a procedure in a criminal trial is an abuse of the discretion accorded district courts in the management of jury deliberations.

## I.  Facts & Trial Proceedings

Defendant Calvin Bryan Evanston ("Evanston") was charged with assault resulting in serious bodily injury under 18 U.S.C. §§ 1153 and 113(a)(6) occurring within the Colorado River Indian Tribes reservation in western Arizona. There is no dispute that an assault occurred and that the victim, Evanston's live-in girlfriend, suffered serious bodily injury.[2] When interviewed, Evanston first claimed he returned home after being away for most of the day, only to find his girlfriend lying on the bed covered in blood. He later changed his story, telling investigators that he came home to see a man leaving the house and his girlfriend partially undressed. Believing she was cheating on him, he slapped her, the unexpected force of the blow spinning her to the ground. On the way down, according to Evanston, her face struck the night stand.[3]

---

"a supplemental instruction given by the court to encourage a jury to reach a verdict after that jury has been unable to agree after some period of deliberation." *United States v. Nickell*, 883 F.2d 824, 828 (9th Cir. 1989).

[2]The victim's injuries—including a nasal fracture, an orbital floor fracture, and a broken jaw—required air evacuation to a level one trauma center in Phoenix and extensive surgery to repair and rebuild the victim's face, including the placement of several screws and plates. The injuries affected the victim's balance and left her with permanent scarring. She still suffers from nerve damage.

[3]The jury heard Evanston's side of the story through statements given to law enforcement. The district court held a pre-trial evidentiary hearing and concluded that Evanston's various statements to law enforcement were either preceded by, or did not require, proper *Miranda* warnings. In a separate memorandum disposition accompanying this opinion, we affirm those rulings.

During a two and one-half day trial, the victim identified Evanston as her assailant and disputed his version of events. There was, she testified, no other man in the house before or during the incident, and her injuries were not the result of a single slap, but rather of Evanston's grabbing her throat, restricting her airways, and hitting her. She remembered Evanston striking her, though she could not remember how many times. She remembered feeling a sharp pain in her face, but could not remember anything that happened between suffering the blow and waking up in the hospital.

After five hours of deliberation over two days, the jury advised that it could not reach a verdict. The district court then gave Ninth Circuit Model Jury Instruction 7.7—commonly referred to as an *Allen* charge, deadlock instruction, or "dynamite charge"[4]—and asked the jury to continue to deliberate.

After almost three hours of additional deliberation, the jury again advised that it was deadlocked. At this point, the district court met with counsel outside the presence of the jury and stated: "I'm informed that other judges in this courthouse, when defendants desire it, are perfectly happy to bring in the members of the jury, ascertain the issue on which they are deadlocked, and allow ten more minutes to each side to argue that point and send the jurors back to redeliberate." While the government welcomed the opportunity to "get to the heart of whatever their . . . disagreement is," Evanston's counsel objected to the proposed process, noting that evidence was closed and that the defense had no desire to reargue or to allow the government to do so.

Noting a reluctance to do so over the defense objection, the

---

[4]"In their stronger forms, these charges have been referred to as 'dynamite charges,' because of their ability to 'blast' a verdict out of a deadlocked jury." *United States v. Mason*, 658 F.2d 1263, 1265 n.1 (9th Cir. 1981).

district court called the jury back and asked if "the procedure of, without adding additional evidence, identifying particular points and rearguing those points might assist them in resolving the impasse." The jury agreed and identified two issues: witness credibility and how the victim's injuries were caused. The district court did not permit further elaboration on either point, allow the jury to identify which witness's credibility it questioned, or ask any questions as to the number or nature of the split, but excused the jury to allow counsel to proffer additional arguments in favor or against using the reargument procedure. The defense repeated its earlier objections, arguing that the evidence adduced by the government simply had not met its burden of providing the jury with the answers to its questions.

Despite these renewed objections—and reasoning that the procedure would avoid manifest necessity to declare a mistrial —the district court decided it would allow both sides an opportunity to address the jury on the identified issues. The government presented its supplemental closing argument first, and the defense followed. After two more hours of deliberation, the jury returned a unanimous guilty verdict.

Evanston appeals that verdict, arguing that the district court's actions in questioning the jurors as to the subject of their deadlock and allowing supplemental argument on those factual issues invaded the jury's role as the sole fact-finder.

## II.  Standard of Review

As an issue of first impression in this circuit, there is no authority identifying a specific standard for reviewing the decision to allow supplemental argument. Because matters of trial management are typically reviewed for abuse of discretion, *United States v. Goode*, 814 F.2d 1353, 1354 (9th Cir. 1987), including where trial management decisions relate to jury deadlock, *see United States v. Berger*, 473 F.3d 1080, 1089 (9th Cir. 2007), and the only other circuit to address the

issue has employed a similar standard, *United States v. Ayeni*, 374 F.3d 1313, 1314-15 (D.C. Cir. 2004), we apply the abuse of discretion standard of review here. Under that standard, "the district judge's discretion should be preserved unless its exercise could deprive the defendant of a constitutional right or otherwise prejudice defendant's case." *Goode*, 814 F.2d at 1355. However, "[w]hether a judge has improperly coerced a jury's verdict is a mixed question of law and fact we review *de novo*." *Berger*, 473 F.3d at 1089 (citing *Jiminez v. Myers*, 40 F.3d 976, 979 (9th Cir. 1994)).

## III.   *Discussion*

### A.   Discretion, Coercion, and the Traditional Roles of the Judge and Jury

**[1]** District courts are accorded substantial discretion in the control of jury deliberations. *See, e.g.*, *Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946). Nevertheless, because the right to a trial by jury as fact-finder in serious criminal cases is "fundamental to the American scheme of justice," *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993) (citation and internal quotation marks omitted), it is a "cardinal principle that the deliberations of the jury shall remain private and secret" in order to protect the jury from improper outside influence, *United States v. Olano*, 507 U.S. 725, 737 (1993) (citation and internal quotation marks omitted). *See generally* Diane E. Courselle, *Struggling with Deliberative Secrecy, Jury Independence, and Jury Reform*, 57 S.C. L. Rev. 203 (Autumn 2005). The judge's traditional role in a jury trial is thus limited to arbiter of the law and manager of the trial process, *Quercia v. United States,* 289 U.S. 466, 469 (1933); the jury remains the primary finder of fact and essential check on arbitrary government, *see United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572 (1977); *see also* U.S. Const. amend. VI; *Duncan v. Louisiana*, 391 U.S. 145, 151-54 (1968) (discussing historical development of jury trial as fundamental right in America). For these reasons, "[t]he trial

judge is . . . barred from attempting to override or interfere with the jurors' independent judgment in a manner contrary to the interests of the accused," *Martin Linen Supply Co.*, 430 U.S. at 573, and "it is the law's objective to guard jealously the sanctity of the jury's right to operate as freely as possible from outside unauthorized intrusions purposefully made," *Remmer v. United States*, 350 U.S. 377, 382 (1956).[5]

**[2]** Accordingly, and because "[t]he influence of the trial judge on the jury is necessarily and properly of great weight and his lightest word or intimation is received [by the jury] with deference, and may prove controlling[,]" *Quercia,* 289 U.S. at 470 (internal quotation marks omitted), the court's exercise of discretion in managing deliberations is not without limits. For example, when responding to jury questions or

---

[5]It was in view of the fundamental sanctity of the jury's deliberative process and the attendant necessity of deliberative secrecy that we recently reversed the denial of a habeas corpus petition in *Williams v. Cavazos*, 2011 U.S. App. LEXIS 10345 (9th Cir. May 23, 2011). There, we found that a state trial court violated a petitioner's Sixth Amendment rights by dismissing a lone holdout juror without good cause, and possibly on the basis of his views of the merits of the case rather than any permissible basis. *Id.* at *72. In deciding to dismiss the juror, the trial court questioned individual jurors one by one—including the holdout juror himself—about their views of the holdout juror's reasons for disagreeing with the jury majority. *Id.* at *5-14. We noted that our past precedent had admonished that such "detailed inquiry into the jurors' thinking and motivations would 'compromise the secrecy of jury deliberations' and 'jeopardize the integrity of the deliberative process.' " *Id.* at *51 (quoting *United States v. Symington*, 195 F.3d 1080, 1086 (9th Cir. 1999)). We further emphasized that

> no one, including the judge, is even supposed to be *aware* of the views of individual jurors during deliberations, because a jury's independence is best guaranteed by secret deliberations, such that jurors may 'return a verdict freely according to their conscience' and their 'conduct in the jury room [may be] untrammeled by the fear of embarrassing publicity.'

*Id.* at *44 (alterations in original) (quoting *Clark v. United States*, 289 U.S. 1, 16 (1933)).

requests during deliberations, every effort must be undertaken to avoid influencing or coercing a jury to reach one verdict over another.[6] *See, e.g.*, *Nickell*, 883 F.2d at 829 ("In deciding whether to allow the jury to review testimony during deliberations, the court should avoid giving undue emphasis to particular testimony." (citing *United States v. Binder*, 769 F.2d 595, 600 (9th Cir. 1985))); *United States v. Walker*, 575 F.2d 209, 214 (9th Cir. 1978) ("Because the jury may not enlist the court as its partner in the fact-finding process, the trial judge must proceed circumspectly in responding to inquiries from the jury."). *Cf. Starr v. United States*, 153 U.S. 614, 626 (1894) (advising that the trial judge must take great care to avoid commenting upon evidence in one-sided manner).

**[3]** Extraordinary caution must be exercised when acting to break jury deadlock. This is particularly true with respect to the court's actions in giving an *Allen* charge, which we have recognized as already "stand[ing] at the brink of impermissible coercion." *United States v. Seawell*, 550 F.2d 1159, 1163 (9th Cir. 1977).[7] Even slight deviations from the language and procedure approved by this court can result in reversible error based upon likelihood of coercion. *Mason*, 658 F.2d at 1267-68. The charge's coercive tendencies are so high that we have recommended that if a court determines it will be necessary in the course of the deliberations, the court should include the charge in its initial instructions rather than waiting to administer it until after the jury has retired. *Id.* at 1266. Indeed, the Supreme Court has held, based on its supervisory powers over the federal courts, that federal judges may not convey to a

---

[6]Indeed, the government has previously conceded that "the principle that jurors may not be coerced into surrendering views conscientiously held is so clear as to require no elaboration." *Jenkins v. United States*, 380 U.S. 445, 446 (1965).

[7]The use of *Allen* charges has been so strongly "criticized as constituting an unwarranted intrusion upon the province of the jury" that several of our sister circuits have completely barred their use, opting instead for other forms of instruction. *Nickell*, 883 F.2d at 828; *see id.* (collecting cases).

deadlocked jury the mandate that a verdict must be reached at all, as such a statement might impermissibly coerce a dissenting juror into surrendering a conscientiously held belief about the facts. *See Jenkins*, 380 U.S. at 446.[8]

**[4]** In keeping with these principles, we have held that it is per se error to give a second *Allen* charge where the jury has not requested one, because it conveys a message that "the jurors have acted contrary to the earlier instruction as that instruction was properly to be understood. ('Apparently you didn't listen to what I said before, so I'll repeat it.')," and that message serves no purpose other than impermissible coercion. *Seawell*, 550 F.2d at 1163.

Viewing the district court's procedure against these core principles, we now turn to the particular factors contributing to our decision.

B.   Factual vs. Legal Argument

In *Ayeni*, the only reported circuit decision on the practice of allowing supplemental argument, the defendant was charged with conspiracy to defraud through the taking of vouchers meant to compensate trial witnesses. 374 F.3d at 1313-14. Ayeni's first trial ended in a hung jury mistrial. After a few hours of deliberation in his second trial, the jury announced it was "hopelessly deadlocked." *Id.* at 1314. After refusing to enter a mistrial, the district court invited the jury to identify its areas of disagreement. The jury responded, naming three areas of concern. The district court answered the first by informing the jury that there was no lesser included

---

[8]In a similar exercise of its supervisory powers, the Supreme Court also proscribed inquiry into the numerical division of the jury. *Brasfield v. United States*, 272 U.S. 448, 450 (1926) ("Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. . . . [I]n general its tendency is coercive.").

offense to the one charged. With respect to other areas identified by the jury—why a handwriting expert was not called and whether both sides agreed Ayeni's signatures on the vouchers were authentic—counsel were given ten minutes of supplemental argument to the jury. As here, after a few additional hours of deliberation, the jury returned a guilty verdict on all counts. *Id.* at 1315.

After determining that the jury's concerns could have been addressed with short, neutral answers, the D.C. Circuit held:

> [g]iven these other options, it was an abuse of discretion for the district court to adopt an approach that, in effect, allowed the lawyers to hear the jury's concerns and then, as if they were sitting in the jury room themselves, fashion responses targeted precisely to those concerns.

*Id.* at 1316.

**[5]** *Ayeni* did not go so far as to hold that supplemental argument should *never* be allowed because such a practice always invades the jury's fact-finding prerogative. However, noting that this jury trial innovation was "almost unheard of" in the judiciary,[9] the D.C. Circuit strongly discouraged its use where the reason for the jury's inability to agree is based on a factual matter, rather than confusion about a legal standard. *Id.* at 1317 (noting the parties had cited only a single case in which supplemental arguments were used).

In a concurring opinion, Judge Tatel expressed a stronger view of the impropriety of using such a procedure, arguing that supplemental argument should never be used in response to a jury's factual question because the practice allows law-

---

[9]To date, no reported federal court decision has sanctioned the use of supplemental argument on factual questions in a criminal trial.

yers the opportunity to, in effect, participate in the jury's deliberations. *Id.* at 1318-19.

**[6]** Here, the government argues that the district court had broad discretion to allow supplemental arguments, consistent with the Supreme Court's statement in *Bollenbach* that "[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." 326 U.S. at 612-13. While it is certainly true that the district court should assist the jury in clarifying matters within the judge's province, that responsibility is limited to answering legal, not factual questions. *See Arizona v. Johnson*, 351 F.3d 988, 994 (9th Cir. 2003) ("[W]hile a trial court 'must respond to questions concerning important legal issues,' it 'must be careful not to invade the jury's province as fact-finder[.]' " (quoting *United States v. Nunez*, 889 F.2d 1564, 1569 (6th Cir. 1989))); *see also Quercia* 289 U.S. at 469-72 (concluding that, where trial court made a "definite and concrete assertion of fact . . . likely to remain lodged in the memory of the jury," assessing evidence in a manner resembling fact-finding, it overstepped the bounds of its duty as "governor of the trial for the purpose of assuring its proper conduct and of determining questions of law"). *Cf. Williams*, 2011 U.S. App. LEXIS 10345, at \*45 ("The jury is the only actor permitted to determine guilt—not the judge.").

Indeed, the sentence immediately preceding the passage cited by the government for its broad proposition makes clear that the court there contemplated a trial court's response to the jury's confusion about the relevant *legal* standards: "Discharge of the jury's responsibility for drawing appropriate conclusions from the testimony depended on discharge of the judge's responsibility to give the jury the required guidance by a lucid statement of the relevant *legal criteria*." *Bollenbach*, 326 U.S. at 612 (emphasis added); *see also id.* (noting that government there contended it was "the judge's special business to guide the jury by appropriate legal criteria through the maze of facts before it"); *United States v. Southwell*, 432

F.3d 1050, 1053 (9th Cir. 2005) (" 'the district court has the responsibility to eliminate confusion when a jury asks for clarification of a particular issue' " specifically because a trial court cannot anticipate, when providing initial jury instructions, every possible question a jury may have during deliberations (quoting *United States v. Hayes*, 794 F.2d 1348, 1352 (9th Cir. 1986))).

We have previously cautioned that

> [b]ecause the jury may not enlist the court as its partner in the fact-finding process, the trial judge must proceed circumspectly in responding to inquiries from the jury. The court may properly attempt to avoid intrusion on the jury's deliberations by framing responses in terms of supplemental instructions rather than following precisely the form of question asked by the jury.

*Walker*, 575 F.2d at 214. In view of *Bollenbach* and the traditional roles of the judge and jury, *Walker*'s admonition is properly interpreted to mean that, while the court must aid the jury in clearing away doubts about legal standards, it is not to employ procedures in the exercise of its discretion that will place it in the position of being a "partner in the fact-finding process." *Id.*

**[7]** We think this caution applies with equal force to the placement of attorneys in such a role. Allowing the attorneys to argue further on factual matters after the jury retired to deliberate, over defense objection, was akin to allowing a witness to provide an opinion as to how to weigh evidence presented, which is categorically proscribed. *Cf. United States v. Stephens*, 73 F.2d 695, 703 (9th Cir. 1934) ("A hypothetical question which calls upon a witness to determine the credibility of other witnesses or to pass upon conflicts in the testimony invades the province of the jury, whose duty it is to

determine where the truth lay in cases of conflicts in the evidence." (citing *Dexter v. Hall*, 82 U.S. (15 Wall.) 9 (1873))).[10]

**[8]** The supplemental arguments here intruded upon the jury's fact-finding role in two ways and through two conduits: (1) the judge's questioning as to the reasons for the deadlock required that the jury divulge the state of its unfinished deliberations, thereby violating the jury's deliberative secrecy, *Ayeni*, 374 F.3d at 1320-1324; Courselle, *supra*, at 237-38; and (2) the parties' supplemental arguments, coupled with the judge's insistence on continuing after a second deadlock, injected the court and the attorneys into the jury's deliberative process, thereby raising the specter of jury coercion. *Cf.* Courselle, *supra*, at 225 ("Coercive comments do not infringe upon deliberative secrecy because they do not require revelation of the jurors' thought processes, but [they] diminish the jury's independence . . . . In other words, coercive comments may not let the jury's thoughts out of the deliberation room, but they let the judge's influence in."). The district court ordered, and the parties presented, additional arguments regarding matters of fact. Because the parties were alerted to the factual issues dividing the jury, they could tailor their arguments accordingly. As Judge Tatel observed in *Ayeni*, supplemental arguments addressing factual issues "thus permit[ted] the lawyers to effectively participate in the jury's deliberations, almost as if they were in the jury room itself." 374 F.3d at 1320. Additionally, given the judge's decision to order such arguments after the jury reported a second deadlock, the lawyers' arguments were of perhaps increased coer-

---

[10]We recognize that this circuit allows for supplemental argument in some cases where supplemental instructions have been given. *United States v. Fontenot*, 14 F.3d 1364, 1368 (9th Cir. 1994). However, in these cases, the supplemental arguments are meant to cure any prejudice caused by the introduction of a new theory into the case after the evidence has closed and the jury has retired to deliberate. *United States v. Hannah*, 97 F.3d 1267, 1269 (9th Cir. 1996). No such new theory or supplemental instruction was presented here, so these cases do not provide the authority the government advocates.

cive value: the implication was, as with a second *Allen* charge, that the judge believed the jury had not accorded proper deference to his prior encouragement to reach a verdict. *See Seawell*, 550 F.2d at 1163.

**[9]** Thus, though we do not foreclose the possibility that supplemental argument treating factual matters could ever be used, its employment here resulted in an impermissible intrusion into the jury's role as the sole fact-finder.

## C. Absence of Formal Adoption

Judge Tatel's *Ayeni* concurrence also noted that it would be particularly inappropriate to allow the practice of supplemental argument as an ad hoc rule of practice, arguing that any such jury trial innovation should first be subject to a formal rulemaking or legislative procedure—such as an amendment to the rules of criminal procedure—which "would permit the kind of rigorous and thorough examination of the benefits and drawbacks of supplemental arguments that so novel and untested a change in longstanding jury procedures requires." 374 F.3d at 1325; *see also id.* (citing *Pan Am. World Airways v. U. S. Dist. Court*, 523 F.2d 1073, 1078 (9th Cir. 1975)).

**[10]** While we do not rest our holding squarely on this point, we agree that absence of formal adoption throws a further shadow upon the practice. In this circuit, the first step of allowing supplemental argument on factual matters—asking a jury to identify its concerns—is not only not authorized by current rule,[11] it seems to run contrary to Ninth Circuit Model

---

[11]None of the Federal Rules of Criminal Procedure relating to jury deliberations, closing arguments, or communications with the court mentions, let alone sanctions, the use of supplemental arguments to address a jury's factual questions. *See, e.g.*, Fed. R. Crim. P. 26.3 (requiring that court give each party the opportunity to object to the propriety of declaring mistrial), 29.1 (mandating the order of closing arguments), 31(d) (allowing parties to request jury poll before jury is discharged in order to verify unanimity). At the very most, Federal Rule of Criminal Procedure 26.3 allows parties to recommend "alternatives" to the declaration of a mistrial; there is no language approving the use of supplemental closing arguments where no new evidence or theory has been introduced.

Jury Instruction 7.6, in which the district judge tells the jury: "Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, on any question submitted to you, including the question of the guilt of the defendant, until after you have reached a unanimous verdict or have been discharged."

Further, the Ninth Circuit's Jury Trial Improvement Committee has considered and adopted several jury trial innovations focused on streamlining jury service and improving the efficiency of jury trials within the circuit. *See* Ninth Circuit Jury Trial Improvement Committee, First Report on Goals and Recommendations (2004); Ninth Circuit Jury Trial Improvement Committee, Second Report: Recommendations and Suggested Best Practices (2006). Among other recommendations, the committee suggested several best practices for improving juror comprehension during the trial process, including: (1) permitting juror note-taking during trial; (2) permitting written questions from jurors during civil trials; (3) providing all jurors with both preliminary and final jury instructions in written form; (4) randomly selecting alternate jurors after closing arguments and instructions; (5) encouraging attorneys to use technology for the presentation of trial exhibits; and (6) permitting juror discussion of evidence as civil trials progress. Ninth Circuit Jury Trial Improvement Committee, Second Report at 10-13.

The committee even recommended that interim statements be made during the course of civil trials to help jurors better comprehend and remember facts. *Id.* at 13-14. Notably absent from the committee's reports and recommendations, however, is the procedure of allowing supplemental argument addressing factual issues, either alone or in conjunction with a deadlock instruction. Such procedure simply has not been vetted through any formal process in our circuit—or, to our knowledge, in any sister circuit.

We are aware that at least three states have adopted rules specifically allowing for additional or supplemental closing

argument in criminal cases where juries indicate that they have reached an impasse in their deliberations. *See* Ariz. R. Crim. P. 22.4 (Arizona); Cal. R. Ct. 2.1036 (California); N.D. R. Ct. 6.9 (North Dakota). Arizona's rule—the first to explicitly allow for supplemental closing arguments of this nature—was adopted as an alternative means of addressing jury questions and impasse, *see* Ariz. R. Crim. P. 22.4 cmt. to 1995 Amendments; *State v. Fernandez*, 169 P.3d 641, 647 (Ariz. Ct. App. 2007), after the state's high court banned the use of *Allen* charges to break jury deadlock on the basis that the evils associated with such charges far outweighed the benefits they presented in avoiding mistrials, *State v. Thomas*, 342 P.2d 197, 200 (Ariz. 1959).

**[11]** But each of these states has had the benefit of the formal rulemaking process to weigh the benefits and risks of allowing supplemental argument. The federal courts have not. While we recognize that the implementation of jury trial innovations may provide for increased judicial economy—a benefit our circuit in particular appreciates—we do not believe that any such radical innovation should be sanctioned without the formal vetting normally attendant to the adoption of an official rule or legislative enactment. *See Pan Am. World Airways*, 523 F.2d at 1078 ("[A] procedure that deviates so sharply from the traditional role of the judiciary cannot be justified as an ad hoc role of practice[.]"). Because "[t]he sacrifice of efficiency for the preservation of liberty is central . . . to the safeguards the Constitution affords criminal defendants[,] . . . the government, including the courts, may not cut corners when dealing with man's freedom." *Williams*, 2011 U.S. App. LEXIS 10345, at *71-72. Efficiency and economy gains simply should not come at the expense of the quality or validity of jury verdicts. *Cf.* Samantha P. Bateman, Comment, *Blast It All: Allen Charges and the Dangers of Playing With Dynamite*, 32 Haw. L. Rev. 323, 338 (2010) (noting that while "dynamite instructions may avoid hung juries and increase the quantity of verdicts, they do so at the cost of decreasing the quality of jury deliberations" and result in ver-

dicts based upon peer pressure rather than actual juror beliefs about the facts) (citations omitted).

D.   Alternatives to Supplemental Argument

**[12]** Further influencing our finding that ordering supplemental argument resulted in an abuse of discretion here is the fact that—as in *Ayeni*—the district court had in its arsenal of permissible actions numerous less coercive alternatives, including doing nothing at all.

**[13]** Here, the district court could merely have reread the original jury instructions relating to each area of concern. *See Johnson*, 351 F.3d at 994-95 (holding that the court acted within its discretion when it refused to answer directly the jury's question but reread original, legally correct instructions, as the court was concerned that a direct answer might mislead or improperly influence the jury); *United States v. Collom*, 614 F.2d 624, 631 (9th Cir. 1979) ("The judge . . . acted appropriately in merely rereading the previously given . . . instructions and inviting further questions should the confusion persist."). The court's initial jury charges included three instructions clearly detailing how jurors should assess witness credibility and the testimony of impeached witnesses. We see no reason why the jury's concerns on that issue could not have been addressed with the simple measure of repeated instruction. Indeed, the government suggested in conference that the court simply "remind the jury of . . . their duty to determine the credibility of witnesses generally," rather than allowing supplemental argument on that issue.

The original jury instructions relating to causation were less extensive; they included only a statement that, in order to find Evanston guilty, the jury must have found that he "intentionally struck or wounded [the victim,]" and, "as a result, [the victim] suffered serious bodily injury[.]" The plain language of this instruction appears clear enough that repetition could have resolved the jury's concern, but if the jury required fur-

ther direction as to what constituted causation, the court could have responded by providing supplemental instruction further illuminating the relevant legal standard.[12] *Walker*, 575 F.2d at 214.

If repetition or supplemental instruction did not suffice to address the jury's concerns, the court could also have offered to allow the jury to review portions of witness testimony, a procedure typically used where the jury requests review of a particular witness's statements. *Cf. United States v. Sandoval*, 990 F.2d 481, 486-87 (9th Cir. 1993) (readback of witness testimony was an appropriate response to jury request and within the discretion of the trial court). It might even have been appropriate to reread the parties' original closing arguments, assuming adequate measures were taken to avoid undue emphasis or coercion. *See United States v. Arboleda*, 20 F.3d 58, 62 (2d Cir. 1994) (abuse of discretion to read back only one side's summation, rather than both). *But see United States v. Guanti*, 421 F.2d 792, 801 (2d Cir. 1970) (not an abuse of discretion to deny the jury's request for readback of defense counsel's summation because summations are not evidence).

These available trial procedures have benefited from thorough vetting and approval in federal courts, greatly reducing the risk of jury coercion. Yet rather than choosing one of these alternatives or declaring a mistrial in the face of the jury's indication of a second deadlock, the trial court here struck a path through the uncharted territory of supplemental

---

[12]As we noted above, had the court provided a supplemental instruction which introduced a new legal theory, supplemental argument on that theory might have been permissible or even required in order to avoid prejudice. *Fontenot*, 14 F.3d at 1368; *Hannah*, 97 F.3d at 1269. Further, while these particular procedures may be more helpful at dispelling legal rather than factual confusion, they nonetheless could have provided the jurors with useful guidance regarding their fact-finding responsibilities and how to apply the proper legal standards to the facts they found in the course of their deliberations.

factual argument. We recently clarified that a trial judge is not required to consider or employ *any* alternatives to declaring a mistrial when a jury reports it is at an impasse, because "conceivable 'alternatives' present a serious risk of coercing jurors[.]" *Harrison v. Gillespie*, 2011 U.S. App. LEXIS 9624, at *37-38 (9th Cir. May 10, 2011) (en banc) (as amended) (trial judge was not required, before declaring a mistrial, to poll jury as to whether it had reached a consensus on imposition of the death penalty, where the jury reported it was at an impasse in its sentencing deliberations) (citing *Renico v. Lett*, 130 S. Ct. 1855, 1864 (2010)). In fact, we noted in *Harrison* that "[s]uch judicial coercion, even if it is subtle and unintentional, creates an impermissible risk of interference with the dynamics of the jury process, and studies have shown that a judge's response to deadlocked juries can have a significant distorting effect on the course of the jury's deliberations." *Id.* at *32 (internal citations omitted).

Thus, it is clear that the district court was not required to avoid mistrial at all costs, particularly where the novel procedure employed ran a significant risk of undermining the defendant's due process rights to a fair trial and impartial jury. Yet when the district court brought the jury in to determine whether additional argument might aid them in reaching a verdict, it made the following statement: "Both parties have a right to make sure that the judge and others do their very best to make sure that the jury empanelled [sic] to hear a case absolutely cannot decide it . . . before they declare a mistrial or release the jury."

Because the jury had already been sent back to deliberate after receiving the deadlock instruction, and because the district court told the jury it was required to do all it could before declaring a mistrial, it seems clear that this commentary and the supplemental closing arguments risked the same type of coercion and prejudice contemplated by *Seawell*. *See* 550 F.2d at 1163. It is very probable that, having been admonished once with the *Allen* charge, and then admonished that

the district court had to make sure the jury "absolutely" could not reach a verdict before declaring a mistrial, the jurors in the minority might have been swayed to reach a verdict more readily, and against their honest beliefs, than if the supplemental arguments had not been given.

## E. Additional Considerations

In addition to doubting that supplemental arguments on factual matters, post-*Allen* charge, could ever escape an undue risk of coercion, we note that a court's actions in employing multiple means of overcoming jury deadlock pose a significant risk of impermissibly shifting the government's burden of proof in violation of the defendant's due process rights. It is beyond comment that the government bears the burden of proving the defendant's guilt beyond a reasonable doubt at trial. *Sullivan*, 508 U.S. at 277-78. Where the evidence has closed, the government has rested its case, and the jury has concluded that it cannot reach a verdict despite its earnest efforts, allowing supplemental arguments effectively allows the government a second bite at the guilty verdict apple.[13] As one scholar has noted, procedures for breaking jury deadlock "not only give the government a second chance but also provide the government specific input from the jury about what doubts it needs to overcome." Courselle, *supra*, at 254 n.168.

---

[13]A similar situation arises when a court dismisses a holdout juror for believing the evidence presented is insufficient to support the charged offense; allowing another juror to take his place eviscerates the constitutional balance struck by the parties' allocated burdens of proof. *Cf. Williams*, 2011 U.S. App. LEXIS 10345, at *48, 55 (citing *United States v. Brown*, 823 F.2d 591, 596 (D.C. Cir. 1987)). "A discharge of this kind would enable the government to obtain a conviction even though a member of the jury that began deliberations thought that the government had failed to prove its case. Such a result is unacceptable under the Constitution." *Brown*, 823 F.2d at 596.

F.   Prejudice

It would be inappropriate to find harmless error here, as there is no way to know whether supplemental argument produced the jury's verdict. *See Ayeni*, 374 F.3d at 1317. We suspect, as did the court in *Ayeni*, that this is the reason the government did not even proffer an argument that any error here was harmless. *Id.* Even were we to engage in a harmless error analysis, the fact that the jury came to a unanimous decision in a relatively short period following the supplemental arguments raises at least the possibility of coercion and resulting prejudice, which we have found dispositive. *See Lowenfield v. Phelps*, 484 U.S. 231, 240 (1988) (citing *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 462 (1978)); *cf. United States v. Ajiboye*, 961 F.2d 892, 894 (9th Cir. 1992) (that the jury deliberated for two additional days after *Allen* charge was given weighed against finding coercion). *But see United States v. Bonam*, 772 F.2d 1449, 1451 (9th Cir. 1985) (verdict reached one and a half hours after *Allen* charge did not demonstrate coercion, viewing total length of deliberations and simplicity of question presented to jury).

Additionally, before proceeding with the presentation of supplemental arguments, the district court here neither reminded the jurors that they should not surrender their honestly held convictions in order to reach a unanimous verdict[14] nor admonished them that they should give full consideration to the entirety of the evidence presented, rather than focusing unduly on the evidence referenced in the supplemental arguments. We have found uncured prejudice requiring reversal where courts failed to use these types of remedial procedures

---

[14]The district court did instruct the jurors not to "change an honest belief as to the weight or effect of the evidence solely because of the opinions of your fellow jurors, or for the mere purpose of returning your verdict" during the course of administering the deadlock instruction. It did not, however, repeat this cautionary instruction before, during, or after the supplemental arguments.

in parallel contexts. *See Mason*, 658 F.2d at 1267-68 (concluding that impermissible coercion resulted where "the judge, after deviating from the charge approved in Allen, made no attempt to counterbalance his excesses by further instructing the minority not to abandon their conscientiously held views merely to secure a verdict"). Absent these ameliorative instructions, the coercive force of the arguments, given after the *Allen* charge, can hardly be questioned. *See id.*

*IV.    Conclusion*

   **[14]** "Any criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfield*, 484 U.S. at 241. It is thus of paramount importance that "the integrity of individual conscience in the jury deliberation process must not be compromised." *Mason*, 658 F.2d at 1268. Because allowing supplemental argument addressing factual matters permitted counsel to look inside the jury's deliberations and focus arguments to those factual concerns the court had asked the jury to reveal, the process, in form and substance, invaded the jury's deliberations, resulting in impermissible coercion. Given that an *Allen* charge *alone*, "even in the most acceptable form, approaches the ultimate permissible limits to which a court may go in guiding a jury towards a verdict[,]" *Sullivan v. United States*, 414 F.2d 714, 716 (9th Cir. 1969), the district court's abuse of discretion in subsequently ordering supplemental arguments—over the objection of the defendant—was particularly egregious here, where the jury reported it remained deadlocked even after it received the dynamite charge, *cf. Seawell*, 550 F.2d at 1163. The compounded coercion resulting from the combined use of the deadlock instruction and supplemental arguments targeted to the jury's exact areas of dispute created a broad, impermissible opportunity for interference with the jury's role as sole fact-finder. For this reason, a new trial is necessary.[15]

---

   [15]Although we have serious doubts as to whether inquiry into the reasons for a deadlocked jury's division, and allowance of additional argu-

**VACATED and REMANDED.**[16]

---

ment on factual issues tailored to those concerns over the objection of the defendant, could ever be conducted in such a manner as to avoid impermissible coercion, we do not reach today the question of whether the use of supplemental arguments to address factual matters is necessarily or always an error of constitutional dimension, whatever the circumstances. Rather, we hold that, under the circumstances presented here, the district court's actions resulted in impermissible coercion, and consequently an abuse of discretion meriting reversal. We so limit our holding because the Supreme Court's precedent on similar jury coercion issues has generally emanated from its supervisory powers over the federal courts, rather than any mandate from the federal Constitution. *See Lowenfield*, 484 U.S. at 239 n.2, 240 n.3 (noting that neither the per se *Brasfield* rule proscribing inquiry into numerical division of jury nor the per se *Jenkins* rule proscribing insistence upon a verdict was based on the constitution). We and other circuits have explained that this appears to be because the presence of coercion produced by the trial court's actions depends on the circumstances of each case, rather than any inherent coercive feature of the procedure itself, and due process would not be violated where no actual or likely coercion occurs. *See, e.g.*, *Locks v. Sumner*, 703 F.2d 403, 406 (9th Cir. 1983) ("[W]e do not wish to imply that an inquiry into the jury's balloting will never infringe on a defendant's right to an impartial jury and fair trial. This would occur if the trial judge's inquiry would be likely to coerce certain jurors into relinquishing their views in favor of reaching a unanimous decision."), *cert. denied*, 464 U.S. 933 (1983); *United States ex rel. Kirk v. Dir., Dep't of Corrs.*, 678 F.2d 723, 727 (7th Cir. 1982) ("It was only because the effects of such an inquiry are often difficult to determine that the Court adopted a per se rule in Brasfield . . . . But while this difficulty in determining actual prejudice may make an outright ban . . . entirely reasonable, it does not make such a rule constitutionally mandated.").

[16]Evanston's challenge to his sentence is rendered moot by this opinion.