[Cite as *State v. Kutkut*, 2013-Ohio-1442.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   98479

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## FAHED KUTKUT

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No.   CR-469393

**BEFORE:**    Keough, J., Celebrezze, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:**    April 11, 2013

**ATTORNEY FOR APPELLANT**

Michael P. Maloney
24441 Detroit Road, Suite 300
Westlake, Ohio 44145

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Gregory Mussman
        William Leland
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Fahed Kutkut ("Kutkut"), contends on appeal that the trial court erred in denying his motion to dismiss the indictment based upon a violation of his constitutional speedy trial rights. For the reasons that follow, we affirm.

{¶2} On July 26, 2004, Jason Horvath was found dead with a gunshot wound to his chest. On August 12, 2005, Kutkut was charged, along with three others, with Horvath's murder. However, and unbeknownst to the state of Ohio, Kutkut left the United States traveling to the country of Jordan at the end of July 2004. Kutkut testified that he went to Jordan to see his mother, whom he learned was involved in an automobile accident. He stated that while in Jordan, he did not know about the indictment filed against him.

{¶3} On August 21, 2009, Kutkut was arrested in the country of Turkey based on a "red notice" that was issued by the federal government. Kutkut did not waive extradition to the United States, and an extradition hearing occurred on February 4, 2010. On March 31, 2010, the Turkish court ordered that Kutkut be returned to the United States. An appeal of this extradition order was taken. On February 9, 2011, Kutkut's extradition was approved and affirmed, and the Turkish Council of Ministers approved and finalized Kutkut's extradition on July 19, 2011. Kutkut returned to the United States and was booked at the Cuyahoga County Jail on August 23, 2011.

**{¶4}** In December 2011, Kutkut moved to dismiss the indictment for want of prosecution in violation of the Sixth Amendment of the United States Constitution. Following a hearing the motion, the trial court denied the motion, determining that the time for speedy trial was tolled during the period of the extradition proceedings and that the State exercised due diligence in securing Kutkut's return to the United States.

**{¶5}** Kutkut ultimately pled guilty to involuntary manslaughter and aggravated robbery. He was sentenced to 23 years in prison.

**{¶6}** Kutkut now appeals raising two assignments of error that will be addressed together. In his first assignment of error, Kutkut contends that the trial court erred in denying his December 2011 motion to dismiss because the State violated his constitutional right to a speedy trial. Kutkut alternatively argues in his second assignment of error that if this court finds that he waived his constitutional right to a speedy trial by entering into a guilty plea, then his plea was not made knowingly, intelligently, or voluntarily because he believed he reserved the right to appeal his December 2011 motion to dismiss.

**{¶7}** Whether a trial court's ruling on a speedy trial question was correct presents a mixed question of law and fact. *State v. Borrero*, 8th Dist. No. 82595, 2004-Ohio-4488, ¶10. Appellate courts apply a de novo standard of review to the legal issues but afford great deference to any findings of fact made by the trial court, if supported by competent and credible evidence. *State v. Barnes*, 8th Dist. No. 90847, 2008-Ohio-5472, ¶ 17.

**{¶8}** Kutkut executed a written waiver of speedy trial on October 19, 2011. "An accused's express written waiver of his statutory rights to a speedy trial as provided in R.C. 2945.71 *et seq*., if knowingly and voluntarily made, may also constitute a waiver of the coextensive speedy trial rights guaranteed by the United States and Ohio Constitutions." *State v. O'Brien*, 34 Ohio St.3d 7, 516 N.E.2d 218 (1987), paragraph one of the syllabus. Although Kutkut executed a written speedy trial waiver, defense counsel expressly stated on the record at the time that it was executed, that the waiver did not forfeit any speedy trial challenge pertaining to the delay before Kutkut's return to the United States. Tr. 6-7. The trial court and State acknowledged that Kutkut reserved the right to make this challenge. Tr. 7. Accordingly, any speedy trial argument and discussion made in this appeal will focus on the time prior to the written execution of the speedy trial waiver.

**{¶9}** Kutkut concedes that he waived his statutory right to a speedy trial by pleading guilty. *See State v. Kelly*, 57 Ohio St.3d 127, 566 N.E.2d 658 (1991), paragraph one of the syllabus. However, his constitutional right to a speedy trial is not waived by his guilty plea. *State v. Carmon*, 8th Dist. No. 75377, 1999 Ohio App. LEXIS 5458, (Nov. 18, 1999), *4, citing *State v. Branch*, 9 Ohio App.3d 160, 162, 458 N.E.2d 1287 (8th Dist.1983). Therefore, we review Kutkut's appeal solely for a violation of his constitutional speedy trial rights.

**{¶10}** The constitutional right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio

Constitution. *Carmon* at *3. "The statutory time requirements of R.C. 2945.71 to 2945.73 are not relevant to a determination of whether a defendant's constitutional right to a speedy trial has been violated by an unjustified delay in prosecution." *Id.* at *4. Instead, courts should employ the balancing test of the factors enunciated by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530-533, 33 L.Ed.2d 101, 92 S.Ct. 2182 (1972). The factors to be weighed include: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) prejudice to the defendant. *Id*. No single factor is regarded "* * * as either a necessary or sufficient condition to the finding of a deprivation to the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker* at 533.

## A. Length of the Delay

{¶11} The threshold factor that a court must first consider is the length of delay. A delay of more than one year between indictment and trial is "presumptively prejudicial" and is generally considered the minimum amount of time required to trigger a full *Barker* analysis. *Doggett v. United States*, 505 U.S. 647, 120 L.Ed.2d 520, 112 S.Ct. 2686 (1992), fn.1; *State v. Selvage*, 80 Ohio St.3d 465, 468, 687 N.E.2d 433 (1997). In this case, there was a six-year delay between Kutkut's indictment in 2005 and his return to the United States in 2011. The State concedes that the length of this delay is sufficient to trigger a full analysis into the other three *Barker* factors. Accordingly, this factor weighs against the State.

B. Reason for the Delay

{¶12} The second factor under *Barker* is the reason the government assigns to justify the delay. *Barker* at 531. This factor is the crux of Kutkut's appeal. While it is true that a defendant is under no obligation to take affirmative steps to ensure that he will be brought to trial in a timely fashion, "a court need not ignore a defendant's fugitivity in considering whether there has been a violation of his sixth amendment right to a speedy trial." *Rayborn v. Scully*, 858 F.2d 84, 90 (2d Cir.1988)

{¶13} The government is "under an obligation to exercise due diligence in attempting to locate and apprehend the accused, even if he is a fugitive who is fleeing prosecution." *Id.*; *but see United States v. Sandoval*, 990 F.2d 481, 483 (9th Cir.1993), citing *United States v. Wangrow*, 924 F.2d 1434, 1437 (8th Cir.1991) ("when the defendant seeks to 'avoid detection by American authorities' and any post-indictment delay can be attributed to him, he waives the right to a speedy trial.")

> The determination as to whether a state had made sufficient efforts to satisfy the "due diligence" requirement is a fact-specific one, however, and the precise amount of effort that is required is apt to vary depending on the circumstances of the case. Thus, while a defendant's status as a fugitive will not relieve the state of its sixth amendment obligations, law enforcement officials are not expected to make heroic efforts to apprehend a defendant who is purposefully avoiding apprehension or who has fled to parts unknown.

*Id.*

{¶14} In this case, the trial court concluded based on the evidence presented at the hearing, that the State exercised reasonable diligence to secure Kutkut's availability as required by R.C. 2945.72. In making this determination, the trial court did not make any

findings of fact in its journal entry. However, and upon request by defense counsel, the trial court made oral findings of fact. Specifically, and as it pertains to the appeal, the trial court found that the extradition process began on August 21, 2009 — the day Kutkut was arrested in Turkey, and ended on August 23, 2011 — the day he was returned to the United States.

{¶15} The trial court also found that the State exercised reasonable diligence in securing Kutkut's availability by collaborating with the Federal Bureau of Investigation ("FBI"). The trial court heard extensive testimony regarding the process of receiving a federal warrant, red notice, and the extradition procedure that occurred in locating and securing Kutkut from Turkey.

{¶16} FBI Special Agent Philip Torsney testified that he assisted the Cleveland Police Department regarding a fugitive (Kutkut) who was wanted on a murder warrant by the city of Cleveland. He testified that information was obtained that Kutkut fled the United States, and based on this information he obtained an unlawful flight warrant for Kutkut in 2005 in federal court. According to Agent Torsney, this warrant allows the FBI to actively pursue and look for fugitives when they flee from certain jurisdictions. After obtaining the warrant, he immediately applied for a red notice, which allows the International Criminal Police Organization ("INTERPOL") or a foreign country to arrest or detain fugitive individuals outside the United States. The red notice was issued by INTERPOL in February 2006.

**{¶17}** Kutkut was arrested on the red notice on August 21, 2009. The FBI was notified through INTERPOL that Kutkut was being detained by Turkish authorities. According to Agent Torsney, Turkish authorities gave the FBI 60 days to make an official request to have Kutkut arrested by the Turks. In March 2010, he was notified that the regional court in Hatay, Turkey had initially approved the extradition of Kutkut back to the United States. However, Agent Torsney testified that he became aware that Kutkut had appealed his extradition. Agent Torsney further testified that he then learned that Kutkut's extradition was affirmed by the Turkish Supreme Court in February 2011. The Council of Ministers made the final determination regarding extradition in July 2011 and Kutkut was returned to the United States in August 2011.

**{¶18}** Under our standard of review, we afford great deference to the trial court's findings of fact. In doing so, we find the trial court's findings are supported by competent and credible evidence. "'A true fugitive, whose location is unknown, or who is successfully resisting government efforts to bring him into the jurisdiction, will not be able to obtain dismissal of an indictment. This is as it should be. Otherwise, the courts would be sanctioning the playing of games by fugitives.'" *Sandoval* at 484, quoting *United States v. Salzmann*, 548 F.2d 395, 404 (2d Cir.1976) (Feinberg, J., concurring). *See also State v. McClutchen*, 8th Dist. No. 81821, 2003-Ohio-4802, ¶ 13 (when appellant consciously chooses to leave the United States days after the murder and consciously chooses not to return, his choice can reasonably be seen as an attempt to avoid prosecution, and not a coincidence; any delay was caused by appellant's own actions.)

{¶19} Based on the record before this court, the State acted with due diligence in its efforts to locate, apprehend, and extradite Kutkut back to the United States. The delay in this case is attributable to Kutkut's fugitive status and efforts to evade apprehension and prolong extradition. Moreover, we note that only two years passed between the time of his arrest and return to the United States. During the four years prior to arrest, he was living freely in Jordan, a country that does not have an extradition treaty with the United States. Accordingly, the second factor weighs against Kutkut.

## C. Assertion of Speedy Trial Right

{¶20} The third factor to be considered is the assertion of his right to a speedy trial. The defendant's burden of showing he desired a speedy trial "is not satisfied merely by moving to dismiss after the delay has already occurred." *United States v. Batie*, 433 F.3d 1287, 1291 (10th Cir.2006). "[W]hen it is manifestly apparent that a defendant has no serious interest in the speedy prosecution of the charges against him, a count need not ignore the defendant's fugitivity or recalcitrance in determining whether his sixth amendment rights have been violated." *Rayborn* at 92.

{¶21} We are mindful that we are only considering this appeal from the time frame prior to Kutkut's return to the United States and nothing in the record before this court evidences that Kutkut ever asserted his right to a speedy trial during this time. Although Kutkut alleges that he demanded to the Turkish authorities that he be returned to the United States, we do not view this as an assertion of his right to a speedy trial. The record reveals that the underlying motive behind his request was because of the

conditions of the Turkish jail and that he did not understand the language — "[b]ecause that's bad jail. It's not where I wanted to be. I don't understand their language. I don't understand anything. Different culture."

**{¶22}** Accordingly, based on the record, Kutkut did not assert his right to a speedy trial until December 2011, which was after his return to the United States. This factor also weighs against Kutkut.

### D. Prejudice to the Defendant

**{¶23}** The fourth and final factor to be examined is prejudice to the defendant. Kutkut did not raise any argument regarding how or why he was prejudiced by the delay between indictment and his return to the United States, and he makes no mention of prejudice on appeal. While a showing of prejudice is not a prerequisite to finding a Sixth Amendment violation, courts generally have been reluctant to find a speedy trial violation in the absence of genuine prejudice. *Rayborn*, 858 F.2d at 94, citing *Moore v. Arizona*, 414 U.S. 25, 26, 38 L.Ed.2d 183, 94 S.Ct. 188 (1973), *United States v. Mitchell*, 769 F.2d 1544, 1547 (11th Cir.1985). Therefore, the absence of any argument or identification of an issue of prejudice, results in this factor weighing against Kutkut.

**{¶24}** After considering and weighing all the *Barker* factors, we find Kutkut's constitutional right to a speedy trial was not violated and the trial court did not err in denying his motion to dismiss. His first assignment of error is overruled. Having previously determined that Kutkut did not waive his right to challenge on appeal his

constitutional right to a speedy trial from the time of indictment to his return to the United States, Kutkut's second assignment of error is rendered moot.

**{¶25}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
LARRY A. JONES, SR., J., CONCUR